## Myroslaw Dragan *v.* Connecticut Medical Examining Board et al.
## (7878)

Daly, O'Connell and Norcott, Js.

Argued January 15—decision released May 21, 1991

*Paul J. Lahey,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellants-appellees (defendants).

*Philip M. French,* for the appellee-appellant (plaintiff).

O'CONNELL, J. The defendants appeal from the trial court's judgment remanding for a new hearing a contested administrative case that resulted in the revocation of the plaintiff's license to practice medicine. Proceedings were conducted pursuant to the Uniform Administrative Procedure Act (UAPA). General Statutes § 4-166 et seq. The trial court correctly concluded that the plaintiff was denied his right of cross-examination and also should have been given copies of the witnesses' statements prior to the hearing. We affirm in part and reverse in part.

The plaintiff is a physician licensed to practice medicine in Connecticut and the defendants are the state department of health services (the department) and the Connecticut medical examining board (the board). Both defendants are state agencies within the meaning of UAPA.

In May of 1983, the board, on motion of the department, issued an order summarily suspending the plaintiff's medical license pursuant to General Statutes §§ 4-182 (c) and 19a-17c.[1] All of the charges of which

---

[1] General Statutes § 4-182 provides in pertinent part: "(c) No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, *summary suspension of*

the plaintiff was found guilty pertained to his treatment of the same patient, Collette Connor, for drug addiction.[2] Hearings held on various days between June 1, 1983, and October 28, 1984, ultimately resulted in the board's October 23, 1985 decision to revoke permanently the plaintiff's medical license.

After the June 1, 1983, hearing, the case proceeded next on June 7, 1983, and again on August 2, 1983. Because a criminal prosecution had been instituted against the plaintiff involving many of the same facts, the parties agreed to a stay of these proceedings pending completion of the criminal case. At the same time, they also entered into a consent order that permitted the plaintiff to continue practicing medicine, subject to certain limitations and conditions not relevant here,

---

a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined." (Emphasis added.)

General Statutes § 19a-17 provides in pertinent part: "(c) Such board or commission or the department where appropriate may summarily suspend a practitioner's license or permit in advance of a final adjudication or during the appeals process if such board or commission or the department finds that a practitioner or permittee represents a clear and immediate danger to the public health and safety if he is allowed to continue to practice."

[2] The trial court summarized the counts as follows:

1. The plaintiff violated General Statutes § 20-13c by prescribing certain controlled drugs for Connor "in amounts exceeding therapeutic or other medically proper purposes."

2. The plaintiff violated the Code of Federal Regulations (CFR), § 1306.07, by treating Connor for drug dependency "without making a referral to an approved drug treatment program."

3. The plaintiff violated CFR § 1306.07 by prescribing controlled drugs for Connor rather than administering them directly.

4. The plaintiff violated CFR § 1306.07 by treating Connor for drug dependency for longer than the maximum period permitted under his license.

5. The plaintiff violated General Statutes § 21a-266 by writing prescriptions for controlled drugs in the names of members of Connor's family with the intent that such drugs would be delivered instead to Connor.

6. The plaintiff violated General Statutes § 20-13c by giving Connor two syringes of a controlled drug for her to self-administer.

during the stay and until thirty days after the disposition of the criminal case and upon approval by the board.

On April 4, 1984, the plaintiff pleaded guilty in the criminal prosecution to two counts of reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a),[3] a class B misdemeanor. He was sentenced to one year in the custody of the commissioner of correction, execution suspended, two years probation to include 1000 hours of community service plus a $1500 fine. On May 9, 1984, one month after conclusion of the criminal proceedings, the plaintiff wrote to the board requesting the termination of all restrictions on his practice. The board never responded to his letter but instead, on August 28, 1984, resumed the hearing, which had recessed on August 2, 1983. Then, more than a year later, the board issued a decision permanently revoking the plaintiff's medical license on October 23, 1985.

The plaintiff appealed to the trial court claiming, inter alia, (1) that he had been denied his right of cross-examination, (2) that he should have been furnished with witnesses' statements prior to the hearing, and (3) that the board should have terminated the consent order restrictions upon his request. The trial court found, inter alia, "that the denial of the opportunity by the plaintiff to cross-examine Collette Connor violated fundamental principles of fairness which are required in the conduct of administrative hearings." The court remanded the case for a new hearing and ordered the department to furnish the plaintiff with copies of prior statements of all witnesses who would testify against the plaintiff at the rehearing. The court

[3] General Statutes § 53a-64 (a) provides: "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a risk of physical injury to another person."

further ordered that if the plaintiff asked for it the board must hear evidence and rule on the plaintiff's request to terminate the restrictions under the consent order. The defendants appeal to this court and the plaintiff cross appeals.

We turn first to the trial court's ruling on the lack of an opportunity to cross-examine Connor. Connor was clearly a key witness and the centerpiece of the entire proceeding. All charges against the plaintiff relate solely to her. Without Connor this case would not have arisen.

The record shows that Connor testified as a department's witness on June 1, 1983, the first day of the hearing. At the conclusion of her direct testimony, the department instructed her to return on the next hearing date for cross-examination. She did not appear on that day and has never returned. Consequently, the plaintiff never had an opportunity to cross-examine her.

The defendants argue that the record does not support a conclusion that Connor did not return for cross-examination. We do not agree. The transcript shows that at the opening of the next hearing the department informed the board and the plaintiff that Connor had not yet arrived because she was apparently experiencing difficulty obtaining transportation. The department then proceeded with other evidence in its case-in-chief. The defendants contend that it is possible that Connor appeared later in the day and that the plaintiff had changed his mind and decided that he no longer wanted to cross-examine her. This is pure unsupported speculation. If Connor was important at the start of the next hearing, we will not guess that her later appearance in the hearing room was so insignificant that no one mentioned it on the record.

Furthermore, the defendants' contention is contrary to the principle that once a condition is proven to exist,

it is presumed to continue to exist until the contrary is shown. *Taintor* v. *Hartford,* 123 Conn. 515, 539, 197 A. 173 (1937); B. Holden & J. Daly, Connecticut Evidence (2d Ed.) § 42. Thus, in the absence of a showing that Connor had returned for cross-examination, the trial court properly inferred that her absence continued, thereby denying the plaintiff his right to cross-examine her.

Cross-examination is an indispensable means of eliciting facts that may show motive, bias, interest or prejudice. *State* v. *Fullwood,* 199 Conn. 281, 286, 507 A.2d 85 (1986). It " 'is a substantial legal right which may not be abrogated or abridged at the discretion of the court.' " *Pickman* v. *Pickman,* 6 Conn. App. 271, 277–78, 505 A.2d 4 (1986). We recognize that proceedings before administrative agencies are not bound by strict rules of evidence and procedure but they cannot be conducted so as to violate fundamental rules of justice. *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 207, 355 A.2d 21 (1974). Nor may the informalities that are permissible in an administrative hearing be permitted to prejudice the rights of the parties. If this should happen, the court is available to rectify the wrong. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 540, 79 A.2d 350 (1951). Moreover, the right of cross-examination is expressly provided for in contested hearings conducted by agencies subject to the UAPA, General Statutes § 4-178 (5).[4]

The defendants argue that the plaintiff could have subpoenaed Connor to return and thus have been able to exercise his right of cross-examination. The trial court found that "[Connor] had been present at the hearing and testified at length on direct examination, providing the cornerstone of the department's case.

---

[4] General Statutes § 4-178 provides in pertinent part: "In contested cases . . . (5) a party and such agency may conduct cross-examinations required for a full and true disclosure of the facts . . . ."

The department had instructed her to return and the plaintiff was entitled to believe that she would. It would have been unreasonable for the defendant board then to require the plaintiff to subpoena Connor to return for the required cross-examination just as it is unreasonable now for the board to suggest that the plaintiff had such a duty." We agree with the trial court. She was the department's witness and the department received the full benefit of her direct testimony. The department cannot have the benefit of her incriminating direct testimony and then wash its hands of any responsibility for making her available for cross-examination. To fashion a rule requiring that a party subpoena an opponent's witness to return in order to exercise a right of cross-examination would render the right meaningless.

The trial court correctly concluded that the denial of a party's right to cross-examination of a crucial witness mandates a new trial; *Hirsch* v. *Squillante,* 17 Conn. App. 354, 358, 522 A.2d 1222 (1989); and in an administrative appeal a remand for a new hearing is the functional equivalent of a new trial.

As part of its remand, the trial court ordered that the defendants furnish the plaintiff with copies of any prior statements in its possession from its witnesses. The defendants object to this order on the ground that pretrial discovery is not available in administrative hearings. We agree that the full panoply of discovery rights provided in civil litigation is not available in an administrative hearing. Fundamental rules of procedural fairness, however, require that the plaintiff be accorded certain minimal rights. The court in discussing administrative pretrial discovery in *Pet* v. *Department of Health Services,* 207 Conn. 346, 361, 542 A.2d 672 (1988), expressly conferred on reviewing courts the duty of determining if minimum due process standards are satisfied. Here, the trial court properly concluded

that the pretrial examination of witnesses' statements was crucial to the plaintiff's exercise of his right of cross-examination. We agree.

The defendants also appeal the trial court's order for a hearing under the consent order. The circumstances under which the consent order was issued show that it was intended as an interim measure to allow the plaintiff to continue his medical practice while the license suspension hearing was in abeyance pending resolution of the criminal action. Issues pertaining to the consent order are now moot because that period of abeyance is over and the board has rendered a final judgment. We conclude that the trial court should not have ordered a hearing on the plaintiff's petition to terminate the order because there exists no practical relief that can be granted. *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 158, 479 A.2d 801 (1984).

Upon determining that the defendants had acted unlawfully and identifying the errors, the trial court should simply have sustained the plaintiff's appeal and remanded the case to the board without further comment. Under the law applicable to this case, by going further and ordering the implementation of specific corrective remedies (i.e., ordering cross-examination and disclosure of witnesses' statements), the court encroached on the administrative function of government.[5] *Watson* v. *Howard,* 138 Conn. 464, 469, 86 A.2d 70 (1952); see also *Connecticut Natural Gas Corporation* v. *Public Utilities Control Authority,* 183 Conn. 128, 136, 439 A.2d 282 (1981), in which the trial court was held to

---

[5] General Statutes § 4-183 (k) which would allow such an order did not become effective until July 1, 1989. This appeal is controlled by the law applicable at the start of the administrative proceedings which was prior to July 1, 1989. See *Vernon Village, Inc.* v. *Carothers,* 217 Conn. 130, 585 A.2d 76 (1991), and *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council,* 217 Conn. 143, 584 A.2d 1183 (1991).

have exceeded its authority by ordering a specific remedy, cross-examination and rebuttal to correct perceived errors on the part of the administrative agency.

In the present case, the trial court ordered a continuation of an earlier stay on revocation of the plaintiff's medical license pending the final outcome of a rehearing and any appeals therefrom. This was within the court's authority.[6] This stay should remain in effect pending final disposition of this matter or until further order of the trial court.

We do not reach any other claims in the appeal or cross appeal because they may not arise on rehearing.

The judgment sustaining the plaintiff's appeal is affirmed in part; the judgment is reversed only as to the orders concerning cross-examination, disclosure of witnesses' statements and a hearing on the consent order, and the case is remanded to the trial court with direction to vacate those orders.

In this opinion the other judges concurred.

---

[6] General Statutes (Rev. to 1989) § 4-183 (c), applicable to cases instituted prior to July 1, 1989, provides: "The filing of the petition does not of itself stay enforcement of the agency decision. The agency may grant, *or the reviewing court may order, a stay upon appropriate terms.*" (Emphasis added.) Any questions concerning the terms of the stay should be directed to the trial court.