[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Francis Alaimo, has appealed from a decision of the Department of Liquor Control suspending his cafe liquor permit for "twelve days with no payment of a fine and an additional twenty day suspension or payment of a fine in the amount of $1,500 in lieu thereof as is provided by regulation section 30-6-A8 subparagraph (K)." (Ex. A). In a separate action, No. CV 92-0703057, the plaintiff has obtained a stay of the order pendente lite. CT Page 9286
After a hearing held on February 11, 1992, the Liquor Control Commission found that five charges of violations of the Liquor Control Act had been proved against the plaintiff:
Charge #1. On December 7, 1990 in the Town of Enfield you violated Section 30-86 of the General Statutes: (2 counts) in that you did by yourself, servant or agent sell and/or deliver alcoholic liquor to a minor, ELIZABETH CARTER, JANELLE M. SENATOR.
Charge #2. On December 7, 1990 in the Town of Enfield you violated Section 30-90 of the General Statutes: (2 counts) in that you did by yourself, servant or agent permit a minor ELIZABETH CARTER, JANELLE M SENATOR, unaccompanied by parent, guardian or spouse to be in a room where alcoholic liquor is served at a bar.
Charge #3. On December 7, 1990 in the Town of Enfield you violated Section 30-53 of the General Statutes: in that you did fail to have your permit recorded with the Town Clerk as required by said Section.
Charge #4. On March 3, 1991 in the Town of Enfield you violated Section 30-86 of the General Statutes: (2 counts) in that you did by yourself, servant or agent sell and deliver alcoholic liquor to a minor, TRISTA MALONEY, ANTHONY FAY.
Charge #5. On March 3, 1991 in the Town of Enfield you violated Section 30-90 of the General Statutes: (2 counts) in that you did by yourself, servant or agent permit a minor, TRISTA MALONEY, ANTHONY FAY, to loiter upon the permit premises and you did allow a minor, TRISTA MALONEY, ANTHONY FAY, unaccompanied by parent, guardian or spouse to be in a room where alcoholic liquor is served at a bar.
Charges 1-2 are based on evidence presented at the hearing that two minors, Elizabeth Carter and Janelle Senator, were served alcoholic beverages on December 7, 1990, at the plaintiff's permit premises known as Memories Cafe, and were allowed on the premises without a parent, guardian or spouse. Charge #3 is based on the failure of the plaintiff on the same date to have filed a duplicate copy of his cafe liquor permit with the town clerk of Enfield, as required by G.S. 30-53. Charges 4-5 involved the same statutory violations as charges CT Page 92871-2, but occurred on March 3, 1991, and relate to two other minors, Trista Maloney and Anthony Fay.
The plaintiff raises four grounds to support his claim that the decision of the commission should be reversed or modified: (1) the exception from the liability imposed by G.S. 30-86
(Rev. 1989) on a permittee for serving a minor with respect to "a sale or delivery made in good faith to a minor who practices any deceit in the procurement of an identity card issued in accordance with (G.S. 1-1h), who uses or exhibits any such identity card belonging to any other person or who uses or exhibits any such identity card which has been altered or tampered with in any way," should apply also to driver's licenses, such as those used for three of the minors involved; (2) there was insufficient evidence that the beverage served to any of the minors contained alcohol; (3) the commission relied on inadmissible hearsay evidence in finding a violation with respect to one of the minors; and (4) the commission arbitrarily sought to impose penalties upon the plaintiff for serving minors, but has ignored the statutory violations committed by the minors in deceitfully purchasing or obtaining alcohol. The court finds merit in only the third contention relating to the use of hearsay evidence and, accordingly sustains the appeal in that respect and remands the case to the commission for further proceedings.
 I.
The plaintiff's claim that a driver's license is the functional equivalent of an identity card issued pursuant to G.S. 1-1h (Rev. 1989) and, therefore, should be treated in the same manner for the purpose of applying the exemption in 30-86
would require the court either to perceive nonexistent ambiguity in the statute or to rewrite it. The specific reference in30-86(2) to "an identity card issued in accordance with the provisions of section 1-1h" plainly is limited to identity cards issued by the motor vehicle department to persons sixteen years of age or older who do not possess a valid driver's license and cannot be extended to other documents. G.S. 30-88a (Rev. 1989) creates a separate exemption for permittees who rely on a driver's license as proof of age by providing that "each permittee may accept such license as legal proof of the age of the licensee . . . ." This exemption is much narrower than the30-86(2) exemption for "a sale or delivery made in good faith to a minor who practices any deceit in the procurement of an CT Page 9288 identity card . . ., who uses or exhibits any such identity card belonging to any other person or who uses or exhibits any such identity card which has been altered or tampered with in any way . . . ." The plaintiff has not claimed that the 30-88a
exemption is applicable in this case. Since the legislature has created exemptions for permittees relying on an identity card in30-86(2) that differ from the exemption for those relying on a driver's license in 30-88, it would distort the legislative intent to hold that the broader exemption of 30-86(2), which refers only to an identity card issued pursuant to 1-1h, should also encompass a driver's license and thus render 30-88a
largely superfluous.
The plaintiff's argument is based on the functional similarity of an identity card and a driver's license with respect to their use in proving age. He has not, however, launched a constitutional challenge to the distinction made by the statutory language between the two documents. His claim that there is no reason for different treatment of an identity card and a driver's license for the purpose of proving age is, however, an overstatement.
There are some differences in the precautions relating to the age of the applicant that must be observed in obtaining an identity card as compared to a driver's license. Section1-1h requires that an application for an identity card "shall be accompanied by a photograph of the applicant previously validated by the office of vital statistics or the town clerk . . . and his birth certificate." (Emphasis added). The corresponding provision of our driver's license statute, G.S.14-36(c), requires only that the "commissioner [be] satisfied that the applicant is sixteen years of age or older" and requires the applicant, "in the discretion of the commissioner" to file, with his application for a motor vehicle license, "a copy of his birth certificate or other prima facie evidence of his date of birth." (Emphasis added). The statutory requirement of 1-1h for a birth certificate to establish the age of the applicant for an identity card cannot be waived by the commissioner in contrast to his discretionary authority to waive even the less rigorous requirement of a copy of a birth certificate that the statute does not require to be certified.
The requirement of 1-1h for validation of the applicant's photograph by a town official may conceivably afford some protection against the kind of deception that may occur when CT Page 9289 photographs are taken of applicants in an overcrowded office of the motor vehicle department pursuant to G.S. 14-36d (Rev. 1989) by a photographer who can never be certain that the person sitting before him is the applicant. Similarly 1-1h requires that the applicant sign his application for an identity card in the presence of an official of the motor vehicle department." No such requirement is applicable to a driver's license, which need only be "signed." GS. 14-36d.
The court concludes that the statutory safeguards against fraud in obtaining or using an identity card are sufficiently superior to those relating to the issuance of a driver's license to warrant the distinction the legislature has made with respect to the exceptions contained in 30-86(2) and 30-88a. Because the exemption provided by 30-86(2) is not available to the plaintiff in those instances in which his employees relied on a false drivers license, his or their good faith in such reliance is immaterial. Section 30-86 has long been construed to establish absolute liability for sales of alcohol to a minor without proof of negligence or other fault and regardless of the good faith of the permittee or his employee.
 II.
The plaintiff's claim of insufficient evidence that the beverages served to any of the minors contained alcohol requires a review of the evidence presented at the hearing.
Janelle Senator testified that she and Elizabeth Carter "had like half a drink each" in response to questions concerning her consumption of alcohol on December 7, 1990 at the Memories Cafe. (T. 26-27). Although she testified on cross-examination that she did not watch the bartender prepare her drink and did not know "exactly what was in it," she also said it was alcoholic and that she expected the drink she ordered to contain alcohol. (T. 27-30).
Trista Maloney testified that on March 3, 1991, her friend, Anthony Fay, purchased a beer for her at the Memories Cafe and placed it in front of her, but that she did not drink it because they were having an argument. (T. 76-77).
Anthony Fay testified that at the same time and place, he ordered "beer" for himself and for Trista Maloney. (T. 86-87). He did not remember whether she had consumed her drink but he CT Page 9290 drank his beer. (T. 87). He had ordered "Bud Light" beer and was familiar with its taste.
Contrary to the plaintiff's claim, there is no requirement that scientific evidence be presented of the alcoholic content of the beverages served to a minor in order to prove a violation of 30-86. The plaintiff's claim of insufficient evidence to establish that alcoholic beverages were sold or served to Janelle Senator, Anthony Fay and Trista Maloney has no merit. The sufficiency of the evidence to prove that such a beverage was sold or delivered to Elizabeth Carter is discussed in Part III of this opinion.
 III.
Elizabeth Carter did not attend the license suspension hearing before the liquor control commission, because she had not been subpoenaed. She has signed a form of affidavit used by the commission and sworn to its truth before an investigator for the commission who acted as the notary. In her affidavit Carter declared that she was nineteen years old on December 7, 1990, the date of the alleged violations in charges 1, 2 and 3. She admitted that she had been in the barroom of the Memories permit premises for one hour and had been drinking a "fuzzy navel." She stated that she had obtained a false photo identification card in New York City that she used to enter the premises.
At the hearing the plaintiff objected to the admission of Canter's affidavit as hearsay and also to the testimony of the investigator that was based thereon. An exception was noted. The defendant commission does not dispute that this evidence was hearsay, being an out-of-court statement by a declarant offered to prove the truth of the matter asserted. Federal Rules of Evidence, Rule 801(c). The commission advances three grounds in support of its ruling, claiming that: (1) hearsay evidence is admissible in administrative proceedings; (2) the statement fell within the hearsay exception for admissions of a party; and (3) the statement constituted a public document and was, therefore, admissible.
In Carlson v. Kozlowski, 172 Conn. 263 (1977), a motor vehicle license suspension was reversed because the motor vehicle department adjudicator had relied on the affidavits of four witnesses to the accident who did not testify at the hearing. The court held that, without any opportunity to CT Page 9291 cross-examine the defendants, the hearsay evidence was "Insufficiently trustworthy to be considered `substantial evidence.'" Id., 267. The court distinguished Richardson v. Peales, 402 U.S. 389 (1971), in which several written reports of treating physicians were relied upon at an administrative proceeding, on the ground that such reports "have long been recognized by the courts as having reliability and probative worth." Id., 267-68.
Carter's affidavit is even more infirm as a basis for finding the facts necessary to support the charges involving her than the affidavits held inadmissible in Carlson, which were given by defendants whom the court characterized as "unbiased." Id. 268 Elizabeth Carter may well have had an interest in avoiding prosecution for her own violation of the law (G.S.30-89) when she decided to cooperate with the commission by signing the affidavit as requested by the investigator.
In Cassella v. Civil Service Commission, 4 Conn. App. 359, affirmed 202 Conn. 28 (1987), the court upheld the use of affidavits in an administrative proceeding on the basis of their reliability under the special circumstances of that case and the unavailability of the declarants. In the present case there is no indication that Carter was unavailable. The commission simply failed to subpoena her. G.S. 4-178(5) provides that "a party and such agency may conduct cross-examinations required for a full and true disclosure of the facts." The plaintiff was not obliged to subpoena Carter, because her testimony was essential for the commission to prove the charges relating to her. See Dragan v. Connecticut Medical Examining Board,24 Conn. App. 662, 668 (1991).
The commission's alternative claim, that Carter's affidavit falls within the exception to the hearsay rule for admissions of a party, has no merit. Carter was not a party to the administrative proceeding, but merely a potential witness for the commission.
The claim that the affidavit was admissible as a public record is virtually frivolous. Carter was not a public official. Even if her affidavit could be viewed as part of the report of the commission's investigation, information not based on an officer's own observations contain in such a report is not admissible. See 30 Am.Jur.2d 1002; Mucci v. LeMonte,157 Conn. 566, 569 (1969); D'Amato v. Johnston, 140 Conn. 54, 59
CT Page 9292 (1953).
The court has concluded that the admission of Carter's affidavit was erroneous, but the impact of the error on the commission's determination remains to be assessed. Without the affidavit and other hearsay testimony relating to Carter, there remains only the testimony of Janelle Senator that she and Carter consumed alcoholic beverages: "half a drink each." The court is not aware of any non-hearsay testimony concerning Carter's age. Accordingly, the commission's finding that charges #1 and #2 had been proved with respect to Elizabeth Carter would have to be revised by deleting her name from those charges. No further revision of the commission's finding would be required.
The commission argues that even if the finding should be revised with respect to Carter, the penalties imposed by the commission may remain unaffected and, therefore, no remand for further proceedings before the commission is necessary. This court cannot determine whether the penalty should be modified because of the error in admitting the hearsay evidence involving Carter, as that matter rests within the discretion of the commission. The court cannot substitute its judgment on such a question for that of the commission. Having imposed the original penalty, the commission is the appropriate agency to decide whether a modification of the original penalty is warranted. Furthermore, the commission would not be precluded by this decision from conducting a new proceeding with respect to the violations involving Carter, just as a trial court may retry a case when a previous judgment has been overturned for error in the admission of evidence. Only the commission can decide whether to pursue further the violations claimed with respect to Carter rather than simply accept the revisions of the finding otherwise required.
 IV.
The plaintiff also contends that the commission has arbitrarily chosen to impose a penalty on him as the permittee for a violation resulting from the deceitful conduct of the minors involved in misrepresenting their ages in order to obtain alcoholic beverages in violation of G.S 30-89, while no penalty has been imposed on the minors. He claims that the court should reverse his suspension on the grounds that it is unfair to penalize him when no attempt has been made to punish the minors. CT Page 9293
The commission is not empowered to enforce the statutes (G.S. 30-88a, 30-89) penalizing minors who procure alcoholic liquor by misrepresenting their ages, because any such prosecution must be instituted by the office of the state's attorney. G.S. 30-105. There is some evidence, however, that before the raid on the Memories Cafe that occurred on December 7, 1990, the Enfield police department had agreed with the commission's agents that no arrests would be made and "the entire matter would be handled administratively." (T. 125, Timmerman). No arrests were made of either the minors involved in the violations of that date or of the plaintiff, who could have been prosecuted for violating G.S. 30-86 and 30-90. The plaintiff in his brief concedes that the two minors involved in the March 3, 1991 violations were arrested and charged with violating G.S. 30-88a. It appears, therefore, that, if there is any merit to the plaintiff's claim, its impact would be confined to the December 7, 1990 incident, when no arrests of either the plaintiff or the minors occurred, apparently pursuant to a prior understanding between the commission and the Enfield police.
"It has been recognized as a general principle that an individual's right to equal protection may be violated by discriminatory administration of a law impartial on its face." 21A Am.Jur.2d 645. The basis for the plaintiff's claim that he is a victim of discriminatory enforcement of the liquor control statutes, however, is even less tenable than that of a motorist who receives a speeding ticket and complains to the officer about all the other drivers, passing by at speeds exceeding the limit, who go unscathed. The statutes violated by the minors in this case are not the same as those that the plaintiff has been found to have violated. There is no evidence that the commission has treated the plaintiff differently from other permittees who have sold alcohol to minors.
The gist of the plaintiff's claim is that there is something unseemly about the commission's agreement with the police that no arrests would be made in the December 7, 1990 raid, apparently for the purpose of encouraging the minors to testify against the permittee at a license suspension hearing. There is less merit in this claim than in similar claims directed at the common practice of prosecutors to offer various inducements in criminal cases in order to obtain the testimony of accomplices or other witnesses. Unseemly though it may be, CT Page 9294 that practice has been justified as necessary for the effective enforcement of the criminal law and has never been deemed to afford a defense to an accused person.
The commission may reasonably have considered the penalties within its jurisdiction to impose pursuant to G.S. 30-86 to be a more effective means of preventing the sale of alcoholic beverages to minors than criminal prosecutions of either a permittee or a minor. Despite the evidence that the plaintiff's policy is to require some written proof of age, such as a driver's license, for each customer, it is clear that such a policy has not been entirely effective. G.S. 30-86a provides that age statements may be required by a permittee of "any person whose age is in question" before such a person may purchase liquor. It prescribes a form to be signed by the purchaser that includes ample warning of the consequences of a false statement. If the plaintiff had followed the practice of requiring age statements from his youthful appearing customers, he would not have been subject to the absolute liability imposed by G.S. 30-86 for selling to a minor. A permittee who has obtained such a statement cannot be penalized if he "shows that the evidence presented to him to establish the age of the purchaser was such as would convince a reasonable man" that he is not selling to a minor. G.S. 30-86a. The plaintiff does not follow the practice of requiring age statements from his customers, which the legislature has devised for the purpose of discouraging minors from purchasing liquor.
The commission could reasonably have concluded that a license suspension proceeding for a violation of G.S. 30-86 was an appropriate measure for preventing sales to minors, because permittees would have a strong incentive to require age statements of their customers. For such proceedings the testimony of the law-breaking minors is usually essential. If criminal charges are pending against the minors, they cannot be required to testify because of the privilege against self-incrimination. Accordingly, there are reasonable grounds for the commission's decision to request the police to make no arrests on December 7, 1990.
 V.
At the argument of this appeal there was some confusion as to whether Trista Maloney had used a false identity card or false driver's license to gain admission to the Memories Cafe. CT Page 9295 It now appears that she used a counterfeit Connecticut identity card (Commission's Ex. 3). Neither party has discussed the implications of this in the supplemental briefs that were filed after the argument nor does the complaint base any claim on Maloney's use of such an identity card. Accordingly, the court will not consider this matter further.
It is ordered that judgment be rendered sustaining the plaintiff's appeal with respect only to the findings involving Elizabeth Carter in charges #1 and #2 and that the case be remanded to the commission for further proceedings as more fully explained in Part III of this opinion.
David M. Shea State Trial Referee