[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the declaratory ruling of the CT Page 6525-KK respondent, Connecticut State Employees' Retirement Commission, holding that petitioner, Ann Gorski, is not entitled to receive lifetime benefits as surviving spouse of Edward Gorski under the plan provision of the Connecticut State Employees' Retirement System. The facts relevant to this decision are as follows.
The deceased husband of the petitioner, Edward Gorski, was a long time employee of the State of Connecticut, who retired on March 1, 1989. In conjunction with his retirement, Mr. Gorski elected to receive his pension in the form of a straight life annuity, under which form pension payments cease upon the death of the retiree. Later in 1989, the General Assembly ratified a pension arbitration award giving retirees who had retired prior to July 1, 1989 the right to change the income payment election to one which provided a life time annuity to the retiree's surviving spouse in the event the retiree predeceased his or her spouse. As part of that election, the retiree would agree to receive a reduced monthly retirement benefit. On December 15, 1989 the respondent State Employees' Retirement Commission sent a letter to a large number of retirees. The name of Edward Gorski was on the computer printout of the list of people to CT Page 6525-LL whom the letter had been sent.
The December 15, 1989 letter stated that retirees had the opportunity to change payment elections from the straight life annuity to an annuity which would provide life time benefits to the retiree's spouse, if the spouse survived the retiree. The letter further advised that in order to make this change, the retiree would have to at least submit an inquiry form enclosed with the December 15, 1989 letter, postmarked by January 31, 1990. The letter further states that failure to respond by that date would result in no change in the existing income election. The respondent Commission did not receive a reply from Gorski. Mr. Gorski died on June 14, 1991. On August 6, 1991 the petitioner requested survivor benefits which request was denied by the Commission on August 30, 1991.
On November 11, 1991 the petitioner requested that the respondent Commission issue a declaratory ruling with regard to the denial of benefits. On December 19, 1991 the respondent Commission held a hearing with regard to the requested declaratory ruling, at which hearing the petitioner presented CT Page 6525-MM portions of Mr. Gorski's medical record and the testimony of the petitioner and another witness.
Petitioner's testimony was to the effect that the December 15, 1989 letter was never received, and that, in any event, the decedent, Mr. Gorski's medical condition at that time, combined with effects of the medication which he was taking, rendered Mr. Gorski incapable off deciding whether to change his payment election. The hearing was not concluded in December but was held open until April 16, 1992, June 16, 1992 and July 16, 1992, in order to permit petitioner to submit further medical evidence prepared by the decedent's treating physician. The Commission also submitted the medical records to the Medical Examining Board and received a communication from that Board advising on the question of possible side effects of the medication prescribed for the late Mr. Gorski. On October 15, 1992, the respondent Commission issued a declaratory ruling as set forth above.
The Commission's ruling was based on factual findings to the effect that the Commission did indeed mail the December 15, CT Page 6525-NN 1989 letter to Mr. Gorski and that that letter was received by him. The Commission further found that the failure of Gorski to respond to that letter was not due to any extenuating circumstances, such as an inability to do so because of his medical condition.
On November 27, 1992 the petitioner instituted this action alleging that the respondent Commission's use of the Medical Examination Board constituted a forbidden ex-parte communication; alleging further that the Retirement Commission's findings that the decedent Mr. Gorski had received the letter December 15 and that no extenuating circumstances had been shown to excuse his failure to respond, were clearly erroneous; and alleging that the Retirement Commission's reliance on agency decisions which were not indexed by name and subject constituted a violation of 4-180a(b).
Appeals from decisions of administrative agencies exist only pursuant to statutory authority. Tarnopol v. Connecticut Siting Council, 212 Conn. 157, 163 (1989); Connecticut Bank 
Trust Co. Commission on Human Rights and Opportunities, 202 CT Page 6525-OO Conn. 150, 154 (1987). There must be strict adherence to statutory provisions when taking an appeal from a decision of an administrative agency. Board of Education of the Town of Fairfield v. Department of Education, 198 Conn. 445, 454 (1986) Statutes governing appeals from decisions of administrative agencies are jurisdictional in nature, so a plaintiff's failure to comply with these statutes renders the appeal subject to dismissal for lack of jurisdiction. Tarnopol v. Connecticut Siting Council, supra, 163.
The statutes provide a right of appeal from final decisions administrative agencies. A declaratory ruling is a final decision. C.G.S. 4-176 (h). Appeals may be taken by "a person . . . who is aggrieved by a final decision. . . ." C.G.S.4-183 (a).
In the present case, it is clear that petitioner's interest in survivor benefits is a specific personal and legal interest since the benefits if allowed would be available to her alone. Thus the respondent Commission's decision specially and injuriously affects the petitioner's interests, because the CT Page 6525-PP respondent Commission decided that the petitioner is not entitled to benefits. The court, therefore, finds aggrievement. The court further finds that this appeal has been instituted in timely fashion in accordance with the requirements of C.G.S.4-183(c).
The scope of review of a decision of an administrative agency by the Superior Court is a limited one.
 The court shall not substitute its judgment format of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, CT Page 6525-QQ probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .
C.G.S. 4-183(j).
"`With regard to questions of fact, it is neither the function of the trial court. . . . to retry the case or to substitute its judgment for that of the administrative agency.'" Connecticut Light Power v. DPUC, 219 Conn. 51, 57,591 A.2d 1231 (1991). The court is "limited to determining whether the agency's findings are supported by substantial and competent evidence and whether the agency's decision exceeds its statutory authority or constitutes an abuse of discretion." State v. Commission on Human Rights and Opportunities, 211 Conn. 464,477, 559 A.2d 1120 (1989). "`Substantial evidence' exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred." Connecticut Light Power v. DPUC, supra; Miko v. Commission on Human Rights and Opportunities, 220 Conn. 192, 200-01, 596 A.2d CT Page 6525-RR 396 (1991). If the agency's decision "is reasonably supported by the evidence it must be sustained." Demma v. Commissioner of Motor Vehicles, 165 Conn. 15, 17, 327 A.2d 569 (1973).
"`Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . .'" Connecticut Light Power v. DPUC, supra, 57-58, citing Griffin Hospital v. Commission on Hospital Health Care, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S.Ct. 781, 93 L.Ed.2d 819 (1986).
With respect to the issues raised by the petitioner concerning the Commission's use of the Medical Examining Board, the petitioner argues first that the respondent Commission's regulations allow the Medical Examining Board to conduct "health examinations for options" but that in this case the Board did not conduct a health examination, but rather evaluated medical records submitted by the petitioner. Petitioner asserts that she does not know the extent or conclusion of this evaluation, CT Page 6525-SS but the record clearly sets forth that communication (which dealt only with side effects of the medication being taken in 1989 and 1990 by the decedent) in the record of this administrative appeal as Exhibit J to ROR #1.
"[M]embers of the agency or a hearing officer may receive the aid and advice of members, employees, or agents of the agency. . . ." C.G.S. 4-181 (b). "[T]he [retirement] commission, an agency resonsible [responsible] for the overall administration of the retirement system, is assisted in this task by the specialized knowledge of the medical examining board." Riley v. State Employees' Retirement Commission, 178 Conn. 438, 441,423 A.2d 87 (1979). Thus, the Board acts as the respondent commission's agent in providing specialized medical information. Accordingly, the court finds that the Medical Examining Board's communication was authorized by statute, and therefore was proper.
Essentially, the letter from the Medical Examining Board summarizes and analyzes some of the medical evidence presented by the petitioner. Thus, this is nothing more than a somewhat CT Page 6525-TT typical staff report to an administrative agency. See Connecticut National Gas Corporation v. PUCA, 183 Conn. 128
(1981).
In another argument with respect to the action of the Medical Examining Board, petitioner argues that she was denied an opportunity to cross-examine the Medical Examining Board's evidence, relying on Dragan v. Connecticut Medical Examining Board, 24 Conn. App. 662 (1991), rev'd on other grounds,223 Conn. 618, (1991). Dragan, however, is inapposite. There is no question that a petitioner has a right to cross-examine witnesses in an administrative hearing. That right does not extend, however, to staff reports, which the court finds the letter from the Medical Examining Board to the respondent Commission to be. Indeed, as noted above, C.G.S. 4-181(b) specifically authorizes "a member of a multi-member agency" to "receive the aid and advice of members, employees or agents of the agency. . ."
The second claim of the petitioner is that the respondent Commission's finding that no extenuating circumstance prevented CT Page 6525-UU the decedent from responding to the respondent Commission's letter of December 15, 1989 is erroneous because of the uncontradicted testimony of the petitioner.
In accordance with the authority cited earlier in this opinion, an agencys factual findings may not be overturned if they are supported by substantial evidence in the present case, the Medical Examining Board's review indicates that the most likely side effect of the medication being taken by the decedent (Tranxene) would have been fatigue and his own medical records prepared when the decedent entered the hospital in July, 1990 (6 months after the deadline for responding to the Commission's letter) indicate that decedent was "in good general health". There is ample evidence in the record from which the agency could have concluded as it did. This evidence easily meets the substantial evidence standard and, of course, the Commission is free to accept or reject whatever evidence it chooses.
The court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of CT Page 6525-VV fact". C.G.S. 4-183(j) Lieberman v. Board of Labor Relations,216 Conn. 253, 262 (1990).
The petitioner also takes issue with the respondent Commission's conclusion that the decedent received the December 15, 1989 letter. Again, this argument is based on nothing more than the assertion that the petitioner's evidence should have been credited by the Commission. The record shows testimony of the Director of the Retirement Division that a copy of the letter was mailed to the decedent. (ROR II, transcript) pgs.16-17, 21.) The mailing of a letter creates a presumption that the letter was received. Merrill Lynch, Pierce, Fenner Smith, Inc. v. Cole, 198 Conn. 518, 533 (1983); DiSimone v. Vitello,6 Conn. App. 390, 393 (1986). "Such a presumption can be rebutted by substantial countervailing evidence that it was in fact not received." Security Connecticut Life Ins. Co. v. Bajorski,6 CSCR 682 (June 26, 1991, Wagner, J.). Tait and LaPlante, Handbook of Connecticut Evidence 2nd Ed. 5.2.2.
A court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to CT Page 6525-WW believe or disbelieve the evidence presented by any witness in whole or in part. Connecticut Light Power Co. v. DPUC,216 Conn. 627, 640 (1990). The respondent Commission's finding as to receipt of the December 15, 1989 letter by the late Mr. Gorski is supported by substantial evidence in the record.
The petitioner also argues that the respondent Commission erroneously concluded that the letter was not ambiguous in advising that a response was required by January 31, 1990. The court agrees with the respondent Commission that there is no ambiguity in the letter. The letter states, in part:
 If you are interested in changing your current income payment election, you must complete the enclosed inquiry form and return it to the Retirement Division postmarked no later than January 31, 1990, accompanied by a copy of your marriage certificate and your spouse's birth certificate. . . . (emphasis in original)
The enclosed spouse option inquiry form states, in part: "REMINDER: If the Retirement Division does not receive this CT Page 6525-XX inquiry form postmarked by January 31, 1990, you will retain your current retirement income payment election." (Emphasis in original.) Whether the finding by the respondent Commission as to the lack of ambiguity in the December 15, 1989 communication is a question of fact or a question of law, it does not constitute grounds for sustaining of petitioner's appeal. The petitioner characterizes the decision as to ambiguity as a finding of fact, and if that is the case that finding is supported by substantial evidence. The question of ambiguity may well be a question of law but, in that event, the decision of the respondent Commission is not unreasonable, arbitrary, illegal or in abuse of its discretion.
The final claim of the petitioner is that the respondent Commission was in violation of C.G.S. 4-180a by having failed to index and have available for public inspection and copying its "written orders and final decisions rendered on and after October 1, 1989." C.G.S. 4-180a(b) provides:
 no written order or final decision may be relied on as precedent by an agency until CT Page 6525-YY it has been made available for public inspection and copying . . . (N)o written order or final decision may be relied on as precedent by an agency unless it also has been indexed by name and subject.
The Connecticut State Regulations 5-155-6 provides: "[A] compilation of all decisions and regulations [is] available for public inspection at the office of the [retirement] commission."
The brief of the respondent Commission claimed that the prior decisions of the Commission were indeed indexed and available for public inspection. Since the factual predicate for this issue was not clear from the record, the court ordered an evidentiary hearing which was held on July 26, 1993. "If alleged irregularities in procedure before the agency are not shown in the record . . ., proof limited thereto may be taken in the court." C.G.S. 4-183 (i).
At that hearing employees of the respondent Commission CT Page 6525-ZZ testified as did an attorney who contacted the Commission while working on the brief in this very appeal. The bureau chief the retirement Commission testified that while the Commission is now in compliance with C.G.S. 4-180a, that compliance has only been achieved within the last several weeks. Apparently, a June 1991 decision of the superior court caused the Commission to believe that it did not have authority to render final decisions, only declaratory rulings, and as a result the director of the retirement division withdrew from a file that the Commission had been maintaining copies of previous final decisions of the Commission, retaining only a few declaratory rulings. In any event, it is clear from the testimony that those decisions were not indexed by subject and name as required by the statute.
The declaratory ruling of the respondent Commission does cite two (2) previous decisions, one of which, the testimony revealed, was not a declaratory ruling but a final decision, and therefore would not have been available to the petitioner's counsel unless petitioner's counsel knew enough to ask for it by name. The cited decision apparently contains a general CT Page 6525-AAA discussion of the extenuating circumstances concept. A key portion of the Commission's factual finding was to the effect that the petitioner did not present sufficient evidence of extenuating circumstances as to the decedent's failure to respond to the December 15, 1989 letter in timely fashion. Of even greater concern to the court, however, is the "retirement division case history" which was submitted as Item I of the return of record. This item is a four page "case history" with numerous exhibits such as the letters in question, the petitioner's earlier letter to the Commission, the Commission's response and the medical records as well as the Medical Examining Board's response to the Commission's request for comment on the medical records. In the four page "case history", two and one-half pages are occupied by reference to nineteen previous decisions of the Commission "in the context of issue twenty-two of the award", which the court takes to be the question of the granting of spousal benefits to surviving spouses whose predeceased spouse had failed for one reason or another no make timely election under the opportunity provided the legislature's ratification of the pension award in 1989. It is clear from the testimony that these previous decisions of CT Page 6525-BBB the Commission, which were decided from August 20, 1990 to November 21, 1991, were not available to the petitioner in any meaningful fashion. A review of this item in the return of record discloses that there were nine of the nineteen cases which dealt precisely with the issue of extenuating circumstances relating to the retiree's medical condition and the relationship of those extenuating circumstances to the decedent's failure to respond in a timely manner to the retirement division's December 15, 1989 letter. In five of these nine cases the Commission had denied the request and in four of cases the Commission had granted the request. This case history was provided to the Commission before its June 1992 vote, and the court infers that had these previous decisions of the Commission been available to petitioner's counsel, argument and evidence could have been presented to deal with the specific issues raised by a comparison of the fact patterns of the nine situations in which the Commission had previously acted. The court finds that the agency has "relied" on the unindexed and unavailable decisions in these cases. What remains is to determine whether or not that violation of the statute by the Commission requires reversal. CT Page 6525-CCC
The law requires that "the court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced . . ." C.G.S.4-183(j). The court finds such prejudice albeit there is no specific evidence in the record beyond the inference that competent counsel would more than likely find considerable "grist for the mill" in the numerous decisions relied on by the agency which decisions were not reasonably available to petitioner, as required by the statute.
Even if the record were devoid of evidence tending to prove prejudice, it is the court's opinion that a violation of4-180a(b), once proven, gives rise to a presumption of prejudice. This presumption, to be sure, would be rebuttable, but the burden of showing that a violation of this statute by a state agency has not prejudiced a party must be allocated to the agency if 4-180a is to fulfill its salutory purpose. This was our Supreme Court's analysis in Henderson v. Department of Motor Vehicles, 202 Conn. 453 (1987), which held that the burden of proving no prejudice had resulted from an ex parte communication CT Page 6525-DDD falls on the administrative agency once a violation of C.G.S.4-181 has been demonstrated by the petitioner. The same salient points in Justice Shea's opinion in Henderson, supra, apply with equal force to this situation where a petitioner would often have a difficult time showing with any clarity the specific prejudice arising from an agency's violation (however unintentional or innocently motivated) of a statutory mandate.
The action of the Commission in this case may well also raise due process considerations, but in view of the foregoing the court does not need to reach that issue. See, generally, Schuster's Garage, Inc. v. Department of Motor Vehicles,7 CSCR 124 (February 3, 1992, Maloney, J.); see also Murphy v. Berlin Board of Education, 167 Conn. 368 (1974).
The petitioner Ann Gorski's appeal from the declaratory ruling of the respondent Connecticut State Employee's Retirement Commission is sustained. The matter is remanded to said Commission with directions to rehear the matter de novo,.
Koletsky, J. CT Page 6525-EEE