MYROSLAW DRAGAN *v.* CONNECTICUT MEDICAL
EXAMINING BOARD ET AL.
(7878)

DUPONT, C. J., O'CONNELL and HEIMAN, Js.

Argued September 14, 1993—decision released May 10, 1994

*Henry Salton,* assistant attorney general, with whom were *Paul J. Lahey,* assistant attorney general, and on the brief, *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellants-appellees (defendants).

*Wesley W. Horton,* with whom, on the brief, were *Susan M. Cormier* and *Christy L. Scott,* legal intern, for the appellee-appellant (plaintiff).

O'CONNELL, J. This administrative appeal is before us on remand from the Supreme Court. The plaintiff is a physician licensed to practice medicine in Connecticut and the defendants are the Connecticut department of health services (department) and the Connecticut medical examining board (board). Both defendants are state agencies within the meaning of the Uniform Administrative Procedure Act (UAPA). General Statutes § 4-166 et seq.

The plaintiff's prolonged journey through the legal system commenced in May, 1983, when the board, on motion of the department, brought charges against him and summarily suspended his medical license pursuant to General Statutes §§ 4-182 (c) and 19a-17 (c).[1] The charges pertain to the plaintiff's treatment of a patient for drug addiction. License revocation hearings commenced on June 1, 1983, and continued on June 7, 1983, August 2, 1983,[2] August 28, 1984, and culmi-

---

[1] General Statutes § 4-182 (c) provides: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

General Statutes § 19a-17 (c) provides: "[The Connecticut medical examining board or the department of health services] where appropriate may summarily suspend a practitioner's license or permit in advance of a final adjudication or during the appeals process if such board or commission or the department finds that a practitioner or permittee represents a clear and immediate danger to the public health and safety if he is allowed to continue to practice."

[2] At the August 2, 1983 hearing, the board permitted the plaintiff to resume practicing medicine subject to limitations and conditions that are not relevant here. Further stays have allowed the plaintiff to remain in practice until the present time. See *Dragan* v. *Connecticut Medical Examining Board*, 24 Conn. App. 622, 669–70, 591 A.2d 150 (1991).

nated in a board meeting on October 23, 1985, when the board voted to revoke the plaintiff's license.

The plaintiff appealed the board's decision to the Superior Court which reversed the decision and remanded the case to the board for a new hearing. The defendants appealed to this court. We considered the case in *Dragan* v. *Connecticut Medical Examining Board,* 24 Conn. App. 662, 591 A.2d 150 (1991), wherein we affirmed the trial court's decision that the plaintiff had been denied his right to cross-examine the board's chief witness and had also been denied discovery of witnesses' prehearing statements. Because we believed those issues dispositive of the appeal, we did not reach the defendants' remaining appellate claims or the plaintiff's cross appeal.

The Supreme Court granted certification and reversed this court's decision, concluding that the plaintiff had waived his right of cross-examination as well as his right to challenge the nondisclosure of witnesses' prior statements. *Dragan* v. *Connecticut Medical Examining Board,* 223 Conn. 618, 613 A.2d 739 (1992). The Supreme Court remanded the case to this court to consider the sole remaining issue in the defendants' appeal and the issues in the plaintiff's cross appeal. Id.

### APPEAL

The defendants claim that the trial court, in remanding the case for a new hearing, improperly held that the board was required to indicate either in its minutes or in its memorandum of decision that voting members who had not heard the case had nonetheless familiarized themselves with the record. We reverse the decision of the trial court and remand the case for further proceedings.

The following facts are necessary for disposition of this issue. The board received evidence at hearings on

June 1, 1983, June 7, 1983, and August 28, 1984. Some-
time after the last hearing, the board referred the mat-
ter to Assistant Attorney General Paul J. Lahey to
prepare a memorandum of decision. On October 23,
1985, the board met and voted to accept the memoran-
dum of decision that Lahey had prepared.[3] Only four
board members were present and voting at this meet-
ing. Of these four, only the board chairman, Henry J.
Mannix, Jr., had attended all four hearings. Shirley Y.
Williams missed the August 28, 1984 hearing. Joan H.
Blakeslee missed the August 2, 1983 hearing[4] and Har-
vey A. Katz missed all three of the 1983 hearings.[5] The
record does not indicate whether Williams, Blakeslee
and Katz, pursuant to General Statutes (Rev. to 1983)

[3] The minutes of the meeting of October 23 regarding this matter read:
"Myroslaw Dragan, M.D. - Presentation of Memorandum of Decision by
Assistant Attorney General Paul J. Lahey. Attorney Katz made a motion
to accept the Decision. Dr. Williams seconded the motion. All Board mem-
bers present voted in favor of the motion with Attorney Clarke abstain-
ing. Dr. Mannix signed the Memorandum of Decision."

[4] No evidence was taken at the August 2, 1983 hearing. Rather, the plain-
tiff requested and received a stay of the license revocation proceeding until
the resolution of the criminal charges brought against him. *Dragan* v. *Con-
necticut Medical Examining Board,* supra, 223 Conn. 624–25.

[5] The members present during the hearings and final board meeting were:

| Date | Members Present |
| --- | --- |
| June 1, 1983 hearing | Mannix (Chairman) |
| | Savary |
| | McLeod |
| | Williams |
| | Blakeslee |
| June 7, 1983 hearing | Mannix (Chairman) |
| | Savary |
| | McLeod |
| | Williams |
| | Blakeslee |
| August 2, 1983 hearing | Mannix (Chairman) |
| | Savary |
| | McLeod |
| | Williams |

§ 4-179,[6] read the record of the hearings they missed or otherwise familiarized themselves with the evidence that was received in their absence.[7]

Our Supreme Court recently decided *Pet* v. *Dept. of Health Services,* 228 Conn. 651, 638 A.2d 6 (1994), which involved the identical question of voting by board members who had not attended all of the board hearings. In *Pet,* the Supreme Court concluded, on facts virtually identical to those of the present case, that the record did not disclose "whether the board was sufficiently familiar with the record of [the case] to make an informed judgment in compliance with § 4-179. The trial court, therefore, *lacked any basis for determining whether* the board had complied with the mandates of the UAPA." (Emphasis in original.) Id., 682.

| | |
|---|---|
| August 28, 1984 hearing | Mannix (Chairman) |
| | McLeod |
| | Blakeslee |
| | Katz |
| | Spackman |
| October 23, 1985 board meeting | Mannix (Chairman) |
| | Williams |
| | Blakeslee |
| | Katz |
| | Clarke (abstaining) |

[6] General Statutes (Rev. to 1983) § 4-179 provides: "When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision. The proposal for decision shall contain a statement of the reasons therefor and of each issue of fact or law necessary to the proposed decision, prepared by the person who conducted the hearing or one who has read the record. The parties by written stipulation may waive compliance with this section."

[7] Board members Savary, McLeod and Spackman were present on various dates when evidence was received but did not participate in the final vote or decision.

Consequently, the Supreme Court remanded *Pet* to the trial court for supplementation of the record.

The trial court record in this case, as in *Pet,* is silent as to whether the board members properly apprised themselves of the administrative record so as to fulfill their duties under the UAPA. On the basis of the record's silence, the trial court remanded the case to the board for a new hearing, concluding that the plaintiff was "entitled to a clear showing by the board, either in the minutes of the meeting or its memorandum decision that all members voting on the decision . . . had read the record of the case prior to voting on it." Under the ruling of *Pet,* the trial court's remand to the board for a new hearing in this case was premature. *Pet* instructs that the trial court must first supplement the record in order to provide a basis for determining the issue of whether the board members had sufficiently familiarized themselves with the record. Accordingly, we reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.[8]

## CROSS APPEAL

The plaintiff raises the following issues in his cross appeal: (1) Does the board have the burden of proving that the missing portion of the administrative record was harmless? (2) Should the trial court have permitted the plaintiff to introduce additional evidence? (3) Was the evidence sufficient to find the plaintiff guilty of the charges made against him?

---

[8] Because we hold that the trial court must supplement the record in an effort to develop an adequate basis to determine whether the board members sufficiently familiarized themselves with the record, we need not decide whether the trial court, in granting a new hearing, improperly held that the plaintiff is entitled to an affirmative showing by the board that its voting members had read the record.

The following facts are necessary to the disposition of the first issue. On the plaintiff's appeal from the board's decision, the board made its return of record to the Superior Court in accordance with General Statutes (Rev. to 1983) § 4-183 (d).[9] Because the board's return of record did not contain at least seven exhibits entered into evidence during the license revocation hearing, the plaintiff moved for default. The trial court denied this motion. Thereafter, the board, with the cooperation of plaintiff's counsel, received copies of six of the seven exhibits missing from the record. The lone missing exhibit, which neither of the parties could find or reconstruct, contained the plaintiff's handwritten notes relating to his treatment of Collette Conor, the person who provided the basis for the charges brought against the plaintiff. The plaintiff argues that the board has the burden of proving that the missing exhibit did not prejudice his case.

*Pet* is helpful in the disposition of this issue. In *Pet,* the plaintiff alleged that the administrative record on which the board voted was incomplete because of missing exhibits. *Pet* concluded that without further evidence concerning the missing exhibits, the trial court could not determine their impact on the board's decision. In this case, the record does not reveal when the exhibit was lost. Accordingly, we do not know whether "the importance and timing of the loss of the records impacted on the board's ability to be fully informed of the issues before it . . . ." Id., 682. In light of the exhibit's potential importance and in the absence of an explicit finding by the trial court that the missing

[9] General Statutes (Rev. to 1983) § 4-183 (d) provides: "Within thirty days after the service of the petition, or within such further time as may be allowed by the court, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceedings appealed from, which shall include the agency's findings of fact and conclusions of law, separately stated. . . . The court may require or permit subsequent corrections or additions to the record."

exhibit did not impact the board's decision, we remand the case to the trial court for supplementation of the record on this issue.

In his second claim, the plaintiff argues that he should have been allowed to present additional evidence before the trial court concerning a witness' board certification and two prescriptions written by that witness that might have contradicted the witness' testimony. We note the holding of *Pet* that "a license to practice medicine is a recognized property right and may only be revoked under procedures that comport with constitutional due process of law. . . . [W]hen the government seeks to deprive a person of life, liberty or property, [due process requires] that the thoroughness of the procedure by which the deprivation is effected must be balanced against the gravity of the potential loss and the interests at stake, and . . . that the procedure involved must be appropriate to the nature of the case. . . ." (Citations omitted; internal quotation marks omitted.) Id., 682–83. We conclude that because of the gravity of the potential loss to the plaintiff in this case, the trial court should have allowed the plaintiff to present his additional evidence. We agree with the reasoning of *Pet* that "because of the potentially crucial impact of the plaintiff's claims of procedural irregularities on the propriety of the board's decision, we conclude that the trial court abused its discretion in denying the plaintiff the opportunity to present evidence that would supplement the agency record." Id., 684.

Until the trial court has conducted the proceedings required under our remand, it would be premature for us to examine the record in an attempt to determine whether there was a substantial basis to support the defendant's decision. Accordingly, we do not reach the plaintiff's third claim on his cross appeal.

The judgment is reversed on both the appeal and the cross appeal and the case is remanded to the trial court to allow supplementation of the record and for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.