## Myroslaw Dragan *v.* Connecticut Medical Examining Board et al.
## (14315)

Peters, C. J., Glass, Covello, Berdon and Santaniello, Js.

Argued June 2—decision released August 12, 1992

*Henry A. Salton,* assistant attorney general, with whom were *Paul J. Lahey,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellants (defendants).

*Philip M. French,* for the appellee (plaintiff).

GLASS, J. The plaintiff, Myroslaw Dragan, appealed to the Superior Court from a decision of the defendant Connecticut medical examining board (board), which revoked the plaintiff's license to practice medicine in Connecticut. The license revocation was based on charges of misconduct brought against the plaintiff by the defendant department of health services (department). The trial court sustained the plaintiff's appeal and remanded the matter to the board for a new hearing. The defendants appealed the judgment of the trial court to the Appellate Court, and the plaintiff cross appealed. *Dragan* v. *Connecticut Medical Examining Board,* 24 Conn. App. 662, 591 A.2d 150 (1991). The Appellate Court affirmed the trial court's judgment in part and reversed it in part. We granted the defendants' petition for certification to appeal[1] and now reverse the judgment of the Appellate Court.

The facts relevant to the disposition of the certified issues are as follows. The plaintiff is a physician licensed to practice medicine in Connecticut. The defendants are state agencies within the meaning of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. In May, 1983, the board, on motion of the department, notified the plaintiff of charges it

---

[1] We granted certification limited to the following issues:

"1. Did the Appellate Court properly conclude that the plaintiff's right of cross-examination of Collette Connor was violated?

"2. Did the Appellate Court properly conclude that the plaintiff was entitled by due process of law to the statements of Collette Connor?" *Dragan* v. *Connecticut Medical Examining Board,* 220 Conn. 901, 593 A.2d 967 (1991).

was bringing against him and issued an order summarily suspending the plaintiff's medical license pursuant to General Statutes (Rev. to 1983) §§ 4-182 (c) and 19a-17 (c).[2] The charges pertained to the plaintiff's treatment of a patient, Collette Connor, for drug addiction. The board commenced license revocation hearings on June 1, 1983, in accordance with the contested case provisions of the UAPA. The state's attorney's office also instituted a criminal proceeding against the plaintiff, making factual allegations that were, in part, identical to those that were before the board in its license revocation proceeding.

At the same hearing before the board, the department presented Dr. Clayton Weed as its first witness. During cross-examination of Weed, the plaintiff requested that the department produce a letter Weed had written regarding one of the plaintiff's patients. At that time, the plaintiff also requested copies of any written statements or the substance of any statements made by individuals whom the department intended to call as witnesses.[3] The department agreed to produce

[2] General Statutes (Rev. to 1983) § 4-182 provided in relevant part: "(c) No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

General Statutes (Rev. to 1983) § 19a-17 provided in relevant part: "(c) [The Connecticut medical examining board] or . . . the department [of health services] where appropriate may summarily suspend a practitioner's license *in advance of a final adjudication or during the appeals process* if such board or commission or the department finds that a practitioner represents a clear and immediate danger to the public health and safety if he is allowed to continue to practice."

[3] Pursuant to the criminal investigation of the plaintiff, the Stamford police had executed a search warrant on the office and home of the plaintiff and

a copy of the letter written by Weed, but would not concede that it was required to produce other documents in its possession. The board instructed the parties to try to reach an agreement and stated that it would rule on the matter if no agreement could be reached.

At the June 1, 1983 hearing, the department also called Connor to testify. Prior to the department's direct examination of Connor, the plaintiff asked to inspect the substance of any oral statements Connor had given to the department or the police or any other law enforcement agency that were in the possession of the department. The plaintiff argued that the production of such statements prior to Connor's direct testimony would enable him to review them while she testified and thereby avoid delay between direct and cross-examination. The board denied the plaintiff's request. At the conclusion of Connor's direct examination, the plaintiff once again requested copies of Connor's prior statements. Thereafter, the board stated that the plaintiff had advised it that he had attempted to subpoena certain documents from the Stamford police department that were essential to his cross-examination of Connor.[4] The parties agreed that the plaintiff's cross-examination of Connor could be reserved while the plaintiff attempted to obtain com-

had seized the medical records of Connor and her family members. As part of its investigation of the plaintiff, the department had reviewed statements of certain individuals, including Connor, that were in the possession of the Stamford police department. The department had also separately obtained written statements from other individuals.

[4] Three separate subpoenas issued on behalf of the plaintiff directed the Stamford police department to produce certain records and documents in its possession. One called for the production of the prior statements of witnesses testifying in the license revocation proceeding. The second sought production of patient files and other records relating to witnesses who testified at the proceeding. The third called for police reports, pharmacy records and other documents relating to the arrest of two individuals who were not called as witnesses during the proceeding.

pliance with the subpoena. The board indicated that in the interim it would not rule on the plaintiff's request for production of Connor's prior statements.

At the beginning of the next hearing, which was held on June 7, 1983, counsel for the department stated that Connor was having transportation difficulties and had not yet arrived. He stated that she was expected to arrive later that morning. He stated further that, unless the plaintiff objected, the department would proceed to call other witnesses. The plaintiff did not object, but stated that he had expected to begin cross-examination of Connor that morning. At the same hearing, the department called another of the plaintiff's patients, Shahin Shahidi Green, as a witness. During the course of cross-examination of Green, the plaintiff requested the disclosure of statements Green had given to the Stamford police department. The board noted that such statements were the subject of an outstanding subpoena issued to the Stamford police department. The plaintiff informed the board that the state's attorney's office had filed a motion in the Stamford Superior Court to quash the plaintiff's subpoena. The plaintiff stated further that the trial court had stayed the execution of his three subpoenas until June 21, 1983. He requested that he be given the opportunity to recall Green when the trial court had ruled on the state's motion to quash.[5] The board granted the plaintiff's request and suspended the hearing without scheduling another hearing date.

On June 21, 1983, the trial court ordered the Stamford police department to produce the plaintiff's patient files as well as any related records, such as insurance records, prescription forms, books, appointment books and certain photographs. The trial court did not, how-

---

[5] The plaintiff specifically stated that he was "not asking the [b]oard to order disclosure" of Green's prior statements to the Stamford police department.

ever, rule on the subpoena calling for the release of the prior statements of witnesses. Rather, the trial court requested the plaintiff to submit a memorandum of law in support of his claim that he was entitled to such statements. The plaintiff sent a letter to the department's counsel, dated July 22, 1983, updating the department on the status of his subpoenas to the Stamford police department and the state's motion to quash those subpoenas.[6] The plaintiff also stated in the letter that "we would reserve the right to recall Collette Connor and Shahin Green following our cross-examination [at the

---

[6] The letter in full stated:

"July 22, 1983

Richard J. Lynch, Esq.
Office of the Attorney General
30 Trinity Street
Hartford, Connecticut 06106
    RE: Department of Health Services vs. Myroslaw Dragan
Dear Mr. Lynch:

Reference is made to your letter of July 8, 1983 requesting that (1) we advise the Medical Examining Board of the status of the proceedings in Stamford, Connecticut; (2) the parties attempt to reach agreement to proceed in certain areas; and (3) we advise the Board regarding possible hearing dates. We respond below to the foregoing requests.

As you know, the proceedings in Stamford, Connecticut involve motions by the State's Attorney of the Judicial District of Stamford-Norwalk moving to quash three *subpoenas duces tecum* issued on behalf of Myroslaw Dragan directing the City of Stamford Police Department to produce records and documents in its possession for use in the instant proceedings. On June 21, 1983, Superior Court Judge Martin L. Nigro heard oral arguments by counsel for both sides and directed the Stamford Police Department, through its representative, the State's Attorney, to produce the documents called for in our June 10th subpoena consisting of patient files, insurance records etc. as well as any statements of Dr. Dragan called for in our May 31st subpoena.

On July 5, 1983, after numerous requests on our part, the Police Department released copies of some but not all of the files which Judge Nigro directed it to produce. The remaining records *ordered to be produced* on June 21, 1983 are expected to be turned over on Monday, July 25, 1983.

With respect to the remaining records called for in May 31st and June 2nd subpoenas, the Court directed the parties to submit their arguments in writing. On July 14, 1983, we submitted our affidavit and memorandum of law. (Our submission therein was delayed because of the unavailability of hear-

next hearing] in the event that additional documents ordered produced by Judge Nigro contain impeachment or other cross-examination material."

At the next hearing before the board, which was held on August 2, 1983, the plaintiff requested the board to stay the license revocation proceeding until the resolution of the criminal charges pending against him. The board granted the plaintiff's request for a stay and

ing transcripts of the Medical Board proceeding until July 5, 1983). The State's Attorney's response was due on July 21, 1983. The Court will then rule on the remaining portion of the motions.

It is our contention both before this Board and in Superior Court that Dr. Dragan is both legally and equitably entitled to production of the remaining documents which, in substantial part, were made available by the Stamford Police Department for inspection by Investigator Kardys of the Department of Health Services for use in initiating the instant proceeding. Indeed, we cannot conceive of more egregious behavior occurring during the course of an administrative hearing than is present here. That is, the Stamford Police Department, the party which was most instrumental in initiating this disciplinary proceeding by releasing to the Department of Health Services much of the information presently under subpoena, is now attempting to defeat Dr. Dragan's chances of prevailing in this proceeding by withholding vitally important documents necessary to a full cross-examination of the witnesses called to sustain the summary suspension of Dr. Dragan.

We view the attempt by the Stamford Police Department and the State's Attorney to bar enforcement of duly issued subpoenas in this proceeding as constituting deliberate mischief which can only serve to deny Dr. Dragan his right to administrative due process including his right to a timely hearing and to confront the witnesses against him.

As to a further hearing date, we had suggested Tuesday, July 26, 1983 with the provision that we would reserve the right to recall Collette Connor and Shahin Green following our cross-examination on that date in the event that additional documents ordered produced by Judge Nigro contain impeachment or other cross-examination material. Most recently, Mr. Pavis has advised us that the earliest date on which the Board can resume this hearing is Tuesday, August 2nd.

We, of course, are desirous of an early completion of these proceedings and are prepared to go forward immediately.

Very truly yours,
Francis J. Murray

FJM:lsl"

entered into a consent order permitting the plaintiff to practice medicine, subject to certain restrictions and conditions, during the period of the stay.

The criminal prosecution concluded on April 4, 1984.[7] On August 28, 1984, the board resumed the license revocation proceeding. The plaintiff did not request the department or the board to produce Connor at the hearing that day. After the department concluded its case on August 28, the plaintiff presented his case. Upon completion of the plaintiff's testimony, counsel for the plaintiff stated: "I reserve the right to submit any additional exhibits, you know, subject to whatever objections that the Department of Health Services may have." The board's chairman noted that "the hearing is completed now" and then adjourned the hearing.[8]

---

[7] The plaintiff pleaded guilty to two counts of reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a). He was sentenced to one year in the custody of the commissioner of correction, execution suspended, two years probation to include 1000 hours of community service plus a fine of $1500.

[8] The pertinent colloquy between plaintiff's counsel and the board chairman was as follows:

"Chairman Mannix: Any other questions?

"Mr. Murray: No questions. I reserve the right to submit any additional exhibits, you know, subject to whatever objections that the Department of Health Services may have. What I would like to do is have an opportunity to introduce other letters that I haven't submitted to the Board that represent efforts on the part of Dr. Dragan to make referrals of these patients, as was referred to in his testimony.

"Chairman Mannix: And what we would like to do, Mr. Murray, is we will wait for, in this situation, since the hearing is completed now, we will wait til we get the transcript. So we will receive the transcripts and Mr. Peck and the Board will decide what action we should take, if any, and that is it.

"Mr. Peck will not be sitting with the Board after the first of the month. Paul Lahey or one of the assistants will.

"Mr. Murray: I understand.

"The Witness: Excuse me. There is one thing I am proud of—

"Mr. Murray: I have no further questions on re-direct.

"Chairman Mannix: Then we will conclude the hearing.

"Thank you very much."

On October 23, 1985, the board issued a decision finding that the first six counts of the revised statement of charges had been proven and entered an order permanently revoking the plaintiff's medical license.[9]

The plaintiff appealed the board's decision to revoke his license to the Superior Court. That court reversed the board's decision on the following grounds: (1) the plaintiff had been denied his right to cross-examine Connor; (2) the plaintiff should have been furnished with witnesses' statements prior to the hearing; (3) the board failed to make it clear on the record that all members who had voted on the decision had read the record prior to voting on it; and (4) the board had failed to address certain issues raised by the plaintiff regarding the consent order.[10] The trial court remanded the case to the board and ordered the department to furnish the plaintiff with copies of the prior statements at issue, allow for cross-examination of Connor, and hear evidence and rule on the plaintiff's

[9] The charges on which the plaintiff was found guilty by the board were:

"1. The plaintiff violated General Statutes § 20-13c by prescribing certain controlled drugs for Connor 'in amounts exceeding therapeutic or other medically proper purposes.'

"2. The plaintiff violated the Code of Federal Regulations (CFR), § 1306.07, by treating Connor for drug dependency 'without making a referral to an approved drug treatment program.'

"3. The plaintiff violated CFR § 1306.07 by prescribing controlled drugs for Connor rather than administering them directly.

"4. The plaintiff violated CFR § 1306.07 by treating Connor for drug dependency for longer than the maximum period permitted under his license.

"5. The plaintiff violated General Statutes § 21a-266 by writing prescriptions for controlled drugs in the names of members of Connor's family with the intent that such drugs would be delivered instead to Connor.

"6. The plaintiff violated General Statutes § 20-13c by giving Connor two syringes of a controlled drug for her to self-administer." *Dragan* v. *Connecticut Medical Examining Board,* 24 Conn. App. 662, 664 n.2, 591 A.2d 150 (1991).

[10] The trial court concluded that seven additional claims presented by the plaintiff were "without merit or of insufficient merit to justify reversal of the Board's decision."

request to terminate the restrictions under the consent order. The defendants appealed to the Appellate Court and the plaintiff cross appealed.

The Appellate Court sustained the trial court's judgment insofar as it concluded that the plaintiff's right to cross-examine Connor and his right to the discovery of witnesses' prior statements had been violated. *Dragan* v. *Connecticut Medical Examining Board*, supra, 668. It reversed the trial court's judgment insofar as it actually ordered the board to implement specific corrective remedies on rehearing, such as the ordering of cross-examination and the disclosure of witnesses' statements. Id., 669–70.[11] This appeal followed from our grant of certification to consider whether the Appellate Court properly concluded that the plaintiff's right of cross-examination of Connor had been violated and that the plaintiff was entitled by due process of law to the prior statements of witnesses.

I

We now turn to the first issue certified in this case, namely, whether the Appellate Court properly concluded that the plaintiff's right to cross-examine Connor had been violated. General Statutes (Rev. to 1983) § 4-178 (3) provided that "[in contested cases] a party may conduct cross-examinations required for a full and true disclosure of the facts." The defendants acknowledge that the plaintiff had a statutory right to cross-examine Connor, but assert that the plaintiff waived this right by failing to raise such a claim during the license revocation proceedings and by failing to seek appropriate relief from the board. Alternatively, the

---

[11] The Appellate Court further concluded that the issues surrounding the consent decree were moot "because that period of abeyance is over and the board has rendered a final judgment." *Dragan* v. *Connecticut Medical Examining Board*, 24 Conn. App. 662, 669, 591 A.2d 150 (1991). The Appellate Court did not reach the issues in the cross appeal and one issue in the appeal.

defendants claim that the Appellate Court's conclusion that the plaintiff did not have an opportunity to cross-examine Connor was incorrect.[12] We agree with the defendants that the plaintiff waived his right to cross-examine Connor.[13]

The plaintiff asserts at the outset that the defendants cannot raise their claim of waiver before this court because they did not specifically plead it before the trial court. See, e.g., *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 195, 148 A.2d 554 (1959). This claim is without merit. The plaintiff did not allege that he had been denied the right to cross-examine Connor in his petition to appeal to the Superior Court.[14] Instead, this issue was raised by the trial court during oral arguments on September 20, 1988, more than four years after the conclusion of the board's hearings. On that date, the court requested the parties to submit memoranda on "the lack of cross-examination" of Connor. The defendants filed with the trial court a supplemental memorandum in November, 1988, in which they contended that, because the plaintiff had not sought from the board an order compelling Connor's attendance and had not requested the board to strike her direct testimony, the plaintiff could not prevail on his claim that

[12] The Appellate Court determined that Connor "did not appear on [June 1, 1983] and has never returned. Consequently, the plaintiff never had an opportunity to cross-examine her." *Dragan* v. *Connecticut Medical Examining Board,* 24 Conn. App. 662, 666, 591 A.2d 150 (1991).

[13] This conclusion makes it unnecessary to consider the defendants' alternative argument that the Appellate Court incorrectly concluded that Connor did not appear at a hearing subsequent to the June 1, 1983 hearing. See footnote 12, supra.

[14] Although the plaintiff alleged in his petition to appeal to the Superior Court that the board had violated General Statutes § 4-178, a review of the plaintiff's memorandum of law submitted in support of his petition makes it clear that the plaintiff was not alleging a violation of subsection (3) of § 4-178 regarding cross-examination of witnesses. The plaintiff's petition, therefore, did not put the defendants on notice that he intended to allege a violation of his right to cross-examine Connor.

he had been denied his right to cross-examine Connor. In these circumstances, we conclude that the defendants are not now barred from claiming that the plaintiff waived his right to cross-examine Connor.

"Waiver is the intentional relinquishment of a known right. It is not necessary that a waiver be made in express terms. It may be inferred from the declarations and conduct of the party if it is reasonable to do so." *Cutlip* v. *Commissioner of Motor Vehicles,* 168 Conn. 94, 96, 357 A.2d 918 (1975). In *Cutlip,* we noted that the plaintiff, who claimed on appeal that his due process rights had been violated because he had not been afforded a reasonable opportunity to obtain counsel, had "elected to proceed with the hearing after having been amply informed that he could have counsel if he so desired." Id. Consequently, we concluded that "[h]aving waived his opportunity to be represented by counsel, the plaintiff cannot now claim that he was denied that opportunity." Id. Similarly, in *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 461–63, 521 A.2d 1040 (1987), we held that the plaintiff's failure promptly to seek disqualification of an adjudicator in a motor vehicle license suspension hearing for engaging in ex parte communications with a witness constituted a waiver of this claim. See also *Clisham* v. *Board of Police Commissioners,* 223 Conn. 354, 367–68, 613 A.2d 254 (1992) (claim that board member was impermissibly biased deemed waived if not raised in timely manner).

Other jurisdictions that have considered whether a plaintiff in an administrative proceeding has waived his right to cross-examine a witness have stated that the right to cross-examine, like other constitutional and statutory rights, can be waived if not asserted in a timely fashion. See, e.g., *Martin* v. *Wolfson,* 218 Minn. 557, 569, 16 N.W.2d 884 (1944) ("right to have witnesses sworn and subjected to examination in an admin-

istrative hearing . . . considered as waived where interested persons participate therein without questioning the procedure"); *Joyner* v. *Garrett,* 279 N.C. 226, 235, 182 S.E.2d 553, reh. denied, 279 N.C. 397, 183 S.E.2d 241 (1971) (right to cross-examine "is a right which the licensee waives if he does not assert it in apt time"); see also *Haaland* v. *Pomush,* 263 Minn. 506, 513, 117 N.W.2d 194 (1962).

The record does not support the plaintiff's assertion that he properly preserved his right to cross-examine Connor. Throughout the several days of administrative hearings held before the board, which took place over the course of more than one year, the plaintiff never claimed that he had been denied the right to cross-examine Connor. Following the department's direct examination of Connor, the plaintiff requested that, because he had not yet been able to review Connor's prior statements, his cross-examination of Connor be *reserved* while he attempted to obtain compliance with the subpoena to the Stamford police department directing the production of witnesses' statements. When Connor's appearance at the board's next scheduled hearing on June 7, 1983, was delayed due to transportation problems, the plaintiff indicated his intention to have cross-examined her that morning, but took no further steps, either later during that hearing or on subsequent hearing dates, to assert his right to undertake Connor's cross-examination. By contrast, at the close of the hearings on August 28, 1984, more than one year after the hearings had begun, the plaintiff reserved only the right to submit additional *exhibits* for the board's consideration. See footnote 8, supra. When the board's chairman stated that the hearing was completed, the plaintiff did not then assert that he had been denied an opportunity to cross-examine Connor.

The plaintiff's failure to assert in timely fashion his right to cross-examine Connor might arguably be

excused if he lacked any remedy to compel her presence at a board hearing. The defendants assert, however, that the plaintiff's failure to request the board to subpoena Connor pursuant to General Statutes § 19a-10,[15] or to move the board to strike Connor's testimony on direct examination resulted in a waiver of the right to raise this claim. See *Jutkowitz* v. *Department of Health Services,* 220 Conn. 86, 95–96, 596 A.2d 374 (1991) ("failure to utilize remedy available to cure defect can constitute a waiver of the right to object to the alleged defect"). We agree.

In response to the defendants' claim that the plaintiff had failed to request the board to subpoena Connor, the plaintiff contends that, on May 24, 1983, he sent a letter to the board requesting it to subpoena Connor. We are not persuaded that this measure adequately preserved the plaintiff's claim that his right to cross-examination had been violated. The letter, sent eight days before the beginning of the board's hearings, requested the board to subpoena nine witnesses, including Connor. The timing of this request to subpoena numerous witnesses manifests that it was not made in response to any perceived violation of the plaintiff's right to cross-examine Connor. In fact, the board subsequently advised the plaintiff at the June 1, 1983 hearing that he could subpoena any witness to the hearing. The plaintiff stated that he understood and that he intended to do so. See General Statutes § 51-85.[16] Yet at no time thereafter did the plaintiff subpoena Connor to appear or request the board to do so.

---

[15] General Statutes § 19a-10 provides in relevant part: "In connection with any such hearing, any member of a board or commission . . . may . . . issue subpoenas, compel testimony . . . ."

[16] General Statutes § 51-85 provides in relevant part: "Each attorney-at-law admitted to practice within the state, while in good standing . . . may, within the state, sign writs and subpoenas . . . ."

With respect to the defendants' claim that the plaintiff, to preserve his right of cross-examination, could have moved the court to strike Connor's testimony on direct examination; see, e.g., *Struckman* v. *Burns,* 205 Conn. 542, 549, 534 A.2d 888 (1987); *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 271, 320 A.2d 811 (1973); the plaintiff responds that such an effort would have been futile because the board had "ruled against [the plaintiff] on virtually every contested issue of evidence/discovery." The plaintiff's claim, that moving to strike Connor's direct testimony would have been futile, is based upon mere speculation and conjecture and, therefore, is meritless. See *Williamson* v. *Commissioner of Transportation,* 209 Conn. 310, 316, 551 A.2d 704 (1988); *State* v. *Spencer,* 198 Conn. 506, 512, 503 A.2d 1165 (1986).

Because the plaintiff never asserted during the course of the license revocation proceeding that his right to cross-examine Connor had been violated and because he failed to utilize available administrative remedies to cure any alleged defect, we conclude that the plaintiff waived his right to cross-examine Connor. A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board. " 'We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial.' *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967); see *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 517, 508 A.2d 415 (1986)." *Henderson* v. *Department of Motor Vehicles,* supra, 462.

II

The second issue certified on appeal is whether the Appellate Court properly concluded that the plaintiff

was entitled by due process of law to the statements of various witnesses at the license revocation proceeding hearings. Without conceding that the due process clause required disclosure of witnesses' prior statements, the defendants contend that the plaintiff waived his right to challenge the nondisclosure of statements by not pursuing this claim before the board. We agree.

At the time of the proceeding to revoke the plaintiff's medical license, the UAPA did not mandate the disclosure of witnesses' prior statements either before or during the hearing. See General Statutes (Rev. to 1983) § 4-177. In 1989, the legislature enacted General Statutes § 4-177c, which provides that, in a contested case, "each party . . . shall be afforded the opportunity to inspect and copy relevant and material records, papers and documents not in the possession of the party of such agency . . . ." The plaintiff asserts that, in enacting § 4-177c, the legislature merely confirmed that such disclosure was required by the due process clause.

We need not decide, however, whether the plaintiff in this case had a due process right to disclosure of witnesses' statements prior to the enactment of § 4-177c.[17] Even if such a right existed, the plaintiff failed promptly and adequately to assert such a right before the board. "We have held that the failure to raise a procedural claim or the failure to utilize a remedy available to cure a procedural defect can constitute a waiver of the right to object to the alleged defect." *Jutkowitz* v. *Department of Health Services,* supra, 95; see also *Levinson* v. *Board of Chiropractic Examiners,* 211

[17] The Appellate Court noted that "the full panoply of discovery rights in civil litigation is not available in an administrative hearing." *Dragan* v. *Connecticut Medical Examining Board,* 24 Conn. App. 662, 668, 591 A.2d 150 (1991). Citing *Pet* v. *Department of Health Services,* 207 Conn. 346, 361, 542 A.2d 672 (1988), however, the Appellate Court stated that "the trial court properly concluded that the pretrial examination of witnesses' statements was crucial to the plaintiff's exercise of his right to cross-examination." *Dragan* v. *Connecticut Medical Examining Board,* supra.

Conn. 508, 536, 560 A.2d 403 (1989); *Henderson* v. *Department of Motor Vehicles,* supra, 461–63; *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 213–14, 257 A.2d 795 (1969).

With regard to prehearing discovery, the plaintiff contends that his May 24, 1983 letter to the board adequately preserved any right he might have had to discovery of witnesses' statements. The letter, however, did not mention disclosure of witnesses' statements. Instead, in the letter, the plaintiff requested the board to issue subpoenas to the state's attorney's office and the Stamford police department directing the production of the medical and patient files of eighteen of the plaintiff's patients, prescription forms, insurance forms, correspondence pertaining to the eighteen patients, and the plaintiff's appointment books. The record does not reflect that the plaintiff made any effort, prior to the hearing, to procure copies of witnesses' prior statements. By failing to request prehearing discovery of these statements, the plaintiff waived any claimed right to such discovery. See *Jutkowitz* v. *Department of Health Services,* supra, 95.

At the June 1, 1983 hearing, the plaintiff made a general request that the department provide him with copies of prior written statements or the substance of any prior oral statements, in the possession of the department, made by individuals whom the department intended to call as witnesses. The board did not rule on this request, but, rather, instructed the parties to attempt to reach an agreement on the issue of disclosure. Both before and after Connor's direct testimony on June 1, 1983, the plaintiff requested disclosure of her prior statements. The board denied the plaintiff's first request and postponed ruling on the second request until the Stamford Superior Court had made a ruling on the plaintiff's attempt to subpoena documents from the Stamford police department.

The plaintiff's July 22, 1983 letter to the department's counsel; see footnote 6, supra; indicated that its efforts to obtain witnesses' prior statements were directed solely at the Stamford police department and the state's attorney's office. Rather than contending that the department had an obligation to produce witnesses' statements or that the board had an obligation to order their production, the plaintiff stated in the letter that the actions of the *police department* and the *state's attorney* to bar enforcement of the subpoenas violated the plaintiff's r'ght to administrative due process.

At no point during the course of the hearings, which spanned more than a one year period, did the plaintiff return to the board and request a ruling on either his general request for disclosure of witnesses' prior statements or his more specific request for disclosure of Connor's prior statements. Accordingly, we are persuaded that the plaintiff waived any claim of entitlement to the prior statements of any witnesses.

We reverse the judgment of the Appellate Court and remand the case to that court with instructions to reach the remaining issues.

In this opinion the other justices concurred.