[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED JANUARY 11, 1995
Plaintiffs Craig Brown and the Concerned Citizens of Willington appeal a decision of the defendant department of environmental protection issuing a series of permits to defendant Services Development Corporation. That corporation is a wholly owned subsidiary of Roadway Services, Inc. (both of which are collectively referred to herein as the developer). The Town of Willington Inland Wetlands and Watercourses Commission has intervened as a party defendant. On October 20, 1994, Daniel and Nancy Impey noticed their intervention as plaintiffs pursuant to General Statutes § 22a-19. On November 1, 1994, Roger Peloquin noticed his intervention as a plaintiff pursuant to that statute. The court finds the issues in favor of the defendants.
The facts essential to the court's decision are undisputed and fully reflected in the record. On April 3, 1992, the developer applied to the department and the town wetlands commission for permits necessary to construct a package handling and transportation facility on a tract of land in Willington consisting of approximately one hundred acres. The developer sought permits from the department for the following activities: (1) to divert a portion of a small unnamed stream to facilitate the proposed construction, pursuant to the Connecticut Water Diversion Policy Act, General Statutes § 22a-365 et seq; (2) to discharge stormwater into the stream, pursuant to 22a-430; (3) to construct a stormwater detention basin to collect runoff, pursuant CT Page 906 to § 22a-401; and (4) to discharge 5,100 gallons per day of sewage into the groundwaters pursuant to § 22a-430.
The developer also applied for a permit from the town wetlands commission to fill in approximately two acres of wetlands to the north and east of the proposed construction. The town wetlands commission approved this permit on the condition that the developer grant a "conservation easement" in favor of the town, preserving fifty-nine acres of the property from any development in perpetuity. This permit has not been contested and is not a subject of the present appeal.
On March 12, 1993, pursuant to § 22a-19(a), plaintiffs Concerned Citizens of Willington and Craig Brown intervened in the administrative proceedings conducted by the department to consider the developer's permit applications.
On April 6, 1993, at the urging of the department, plaintiffs Concerned Citizens of Willington and Brown entered into a stipulation to limit the scope of their petition whereby they expressly withdrew the issues they had previously presented for determination except as follows:
 Whether, under Connecticut General Statutes § 22a-19, the Applicant has demonstrated that, considering all relevant surrounding circumstances and factors, there is no feasible and prudent alternative, consistent with the reasonable requirements of the public health, safety and welfare, to the selection of the Willington site that is the subject of said permit applications. The intervenors intend to raise the effect upon the public trust in air, water, and natural resources of the state of the proposed stream diversion, stormwater discharges, and loss of wetland area.
On April 15, 1993, plaintiffs Concerned Citizens of Willington and Brown entered into a further stipulation that provided:
 The intervenors hereby agree to inquire into the feasibility and prudence of no more than three CT Page 907 alternative sites for the Hartford area package handling facility in the hearing on the above referenced permits. Furthermore, two of the sites to be inquired into shall be those, previously considered by the applicant, which the applicant refers to as the Sullivan Avenue site in South Windsor and the Burnham Street site in Manchester. Intervenors shall limit their inquiry to these two sites absent the discovery that the applicant possesses information regarding other alternative sites which has not been disclosed to the intervenors.
In response to these stipulations by the parties, the hearing officer declared that he would not consider any additional sites, other than the two selected by the named plaintiffs, as alternatives to the Willington sites. Plaintiffs Daniel and Nancy Impey and Roger Peloquin, who intervened in this case after the administrative proceedings concluded, were not parties to the stipulations limiting the scope of those proceedings.
The department conducted a public hearing on the developer's applications, which consumed six days during April 1993. Both the developer and the plaintiffs presented testimony and evidence, as did the department's staff.
Following the hearing, the hearing officer rendered a proposed final decision recommending issuance of the permits subject to certain conditions. The plaintiffs objected and were heard by Richard J. Barlow, Chief, Bureau of Waste Management, who had been designated by the department to render the final decision in behalf of the commissioner of environmental protection and the department. Barlow rendered the department's final decision on May 19, 1994. It is that decision which is the subject of this appeal.
The department's final decision adopts most of the factual findings and conclusions reached by the hearing officer and set forth in his proposed decision, but with some important modifications. Not all of these findings and conclusions are germane to the issues raised by the plaintiffs in their appeal, and the following summary sets forth only those that are relevant to the court's decision. CT Page 908
The department found that "relocation of the stream would eliminate about two acres of wetlands . . . [The] loss of the stream at its present location would not constitute a serious adverse environmental impact because the stream has already been disturbed by human activity and its environmental value significantly diminished. Its adjacent wetlands, however, though also disturbed, continue to serve as wildlife habitat and their loss is of more concern. Nonetheless . . . the loss of this wetland habitat does not rise to the level of unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state within the meaning of Conn. Gen. Stat. § 22a-19."
With that finding of no unreasonable impairment of the environment as background, the department addressed the issue of alternatives to the development project. That issue arises in two contexts, under General Statutes § 22a-19(b) and under the Diversion Act. The department held that, although the developer had failed to present adequate proof of the lack of alternatives to the project, neither statute prohibited the issuance of the permits in this case. The plaintiffs do not dispute the department's decision that it has discretion to issue the stream diversion permit under the Diversion Act even if reasonable alternatives exist. The sole basis of the plaintiffs' appeal, rather, is that the developer failed to demonstrate that there are no reasonable alternatives to the diversion and that, therefore, § 22a-19(b) requires that the permits be denied.
The plaintiffs intervened in the administrative proceedings and bring this appeal pursuant to subsection (a) of § 22a-19. That statute permits any person to intervene as a party upon the filing of a verified petition alleging that the project under review is "reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." Subsection (b) of § 22a-19 then provides as follows:
 (b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the CT Page 909 public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to have such effect so long as, considering all relevant circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare.
In its final decision, the department found that the developer had failed adequately to demonstrate that there was no feasible and prudent alternative to the proposed construction on the Willington land. The department held that the developer was required to show (1) that there was no alternative to the site in Willington and (2) that there was no alternative to the planned configuration of the proposed building that would not require the stream diversion and the resultant loss of wetlands.
The department found that the developer presented detailed evidence concerning the two alternate sites specified in the parties stipulation, those in Manchester and in South Windsor. The department found that neither of those sites constituted a feasible and prudent alternative to the Willington site. The department noted, however, that the evidence did not establish that there were no other sites "in all of Central Connecticut" that might serve as such alternatives. Accordingly, the department held that the developer had not satisfied the requirements of § 22a-19(b) in that regard. It further held that the parties could not "stipulate away" the developer's burden of fully evaluating alternative sites because that burden serves the public interest, not merely the interests of the intervening plaintiffs.
With regard to the configuration of the proposed building on the Willington site, the developer had presented as its principal evidence the testimony of its director of properties. This witness was a licensed civil engineer, and he testified as an expert witness. In summary, he testified that the design, size and placement of the proposed building on the site was necessary for the volume of business that the developer planned to do and satisfied various safety and efficiency requirements. Nevertheless, the department CT Page 910 chose to discount this testimony, characterizing it as "no more than bald conclusions, unsupported by any factual data or calculations." Accordingly, the department held that the developer had failed to show that there were no feasible and prudent alternatives to the proposed plan for the Willington site that would not interfere with the wetlands.
Although the department found that the developer had failed to satisfy the requirements of § 22a-19(b) concerning the availability of a feasible and prudent alternative to its project, it held, nevertheless, that the statute does not prohibit the issuance of the permits in question. The department based its decision on its finding, noted earlier, that the project would not cause "unreasonable pollution, impairment or destruction of the environment." Since subsection (b) of § 22a-19 provides that the alternatives test is required only when a project "is reasonably likely to have such effect," the department reasoned that the statute is not applicable in this case, where there is no such likelihood.
The sole basis of the plaintiffs' appeal is that the department misinterpreted the provisions of § 22a-19
requiring the developer to demonstrate that there are no reasonable alternatives to the stream diversion. The plaintiffs contend that the likelihood of any pollution or destruction of wetlands automatically places on a developer the burden of showing that no feasible and prudent alternative exists. In essence, they argue that the existence of a reasonable alternative by definition means that the pollution is unnecessary and, therefore, unreasonable. The court agrees.
"[T]he determination of whether a specific degree of contamination or other environmental detriment is unreasonable may often turn on the availability of alternatives. Even minimal environmental harm is to be avoided if, `considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative.'" Gardiner v. Conservation Commission,222 Conn. 98, 109 (1992), quoting § 22a-19(b). In this case, as the plaintiffs point out, the diversion of the stream alone would result in the loss of two acres of wetlands, clearly more than "minimal" environmental CT Page 911 harm. Accordingly, the statute did require the department to consider alternatives to the project and to determine that no feasible and prudent alternative existed. The department's interpretation of the statute to the contrary was erroneous. This conclusion is not, however, dispositive of the case.
In its brief to the court in this appeal, the department concedes that the final decision contained an erroneous interpretation of § 22a-19. Here, however, the department joins the developer in contending that the plaintiffs waived their right to require that the department consider any alternatives except the sites in Manchester and South Windsor, as specified in the parties' stipulation. The court agrees with that contention.
In their written stipulations at the beginning of the administrative hearing in this case, the plaintiffs agreed that the department's proceedings would be limited to a consideration of alternatives to the Willington site, and, by clear implication, would not include a consideration of on-site alternatives such as reconfiguration of the proposed building. The plaintiffs further agreed that consideration of off-site alternatives would be limited to the Manchester and South Windsor sites. In return for these agreed limitations, the developer made numerous concessions with respect to its applications for the permits.
"Waiver is the intentional relinquishment of a known right. It is not necessary that a waiver be made in express terms. It may be inferred from the declarations and conduct of the party if it is reasonable to do so." Dragan v. Connecticut Medical Examining Board,223 Conn. 618, 629, 613 A.2d 739 (1992). In administrative proceedings, a party may waive any constitutional or statutory right. Id. In the present case, the plaintiffs' intervention was by way of § 22a-19. Although subsection (b) of that statute provided them the right to insist that the department consider alternatives to the proposed project, there is nothing in the statute that prevented them from voluntarily waiving or otherwise circumscribing that right. Although the plaintiffs served the public interest in asserting their claims, they were free to determine the scope of their CT Page 912 endeavor. And once they agreed to limit that scope, they were bound to honor the agreement.
For its part, the developer was under no obligation to present evidence to show that other alternatives that might be imagined would not be feasible and prudent. Although § 22a-19(b) "mandate(s) that the commission consider alternatives to the applicants' proposed action, nowhere is it mandated that the alternatives emanate from the applicants . . . (The statute does not) compel the applicants, sua sponte, to submit formal plans or drawings forall possible alternatives. Absent such a direction by the legislature, we will not read such a requirement into the wetlands act." (Emphasis added.) Red Hill CoalitionInc. v. Conservation Commission, 212 Conn. 710,726 (1989).
Just as the plaintiffs and the developer were entitled to limit the scope of the inquiry concerning feasible and prudent alternatives under § 22a-19, the department was authorized to accept the agreed limitations. "[T]he department encourages disposition of proceedings by agreement when the agreement is consistent with the policies and purposes of relevant provisions of law." Regs., Conn. State Agencies § 22a-3a-6(d)(2)(L)(1). The hearing officer, furthermore, has the authority "to determine the scope of the hearing . . . [or] do any other act and take any other measures to administer this section, expedite proceedings, and maintain order." Regs., Conn. State Agencies § 22a-3a-6(d)(2)(A).
Based on the foregoing considerations, the court concludes that the plaintiffs effectively waived their right to require the department to consider alternatives to the project proposed by the developer except those sites specified in their written stipulation. Since it is undisputed that those sites are not feasible and prudent alternatives to the Willington project, subsection (b) of § 22a-19 does not affect the issuance of the permits.