[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
Dana and David Evans, the plaintiffs herein, have filed an administrative appeal of the decision of the defendant Plan and Zoning Commission of the Town of Glastonbury (the Commission) to grant approval to defendant Testa Development Associates, LLC (Testa) to develop a subdivision containing five rear lots. The other defendants are Lucy May, David M. Russell, and Alvah A. Russell, Jr., who, according to the pleadings, are the owners of the property in question. Trial and argument of the administrative appeal took place in this court on May 30, 2001. For the reasons stated below, the court affirms the Commission's decision and dismisses the plaintiffs' appeal.
DISCUSSION
 I.
As an initial matter in a zoning appeal, the plaintiffs must establish that they are aggrieved by the decision of the zoning board. SeeNortheast Parking, Inc. v. Planning Zoning Commission, 47 Conn. App. 284,287, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269
(1998); General Statutes §§ 8-8(b). Plaintiff Dana Evans testified in CT Page 7483 court that she is the owner of land that abuts the proposed subdivision. There was no dispute of this testimony. The court finds plaintiff Dana Evans has proven aggrievement. See Smith v. Planning Zoning Board,203 Conn. 317, 321, 524 A.2d 1128 (1987); General Statutes § 8-8(a)(1).
Plaintiff David Evans, although married to Dana Evans and residing with her, did not prove that he is an owner of abutting property or that he is otherwise aggrieved by the Commission's decision. However, both he and Dana Evans have standing to raise claims under the Connecticut Environmental Protection Act (CEPA), which liberally grants standing to "any person" to intervene in any administrative proceeding or action for judicial review involving conduct likely to affect the state's natural resources. See Red Hill Coalition, Inc. v. Town Plan ZoningCommission, 212 Conn. 727, 734, 563 A.2d 1347 (1989); General Statutes § 22a-19. To the extent that the Commission's action is challenged under CEPA, plaintiff David Evans may remain in the case.
 II.
In challenging administrative agency action, the plaintiff ordinarily has the burden of proving that substantial evidence does not exist in the record as a whole to support the agency's decision. See Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993). The plaintiff must do more than simply show that another decision maker such as the trial court might have reached a different conclusion. This court does not try the case de novo. Id. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Spero v. Zoning Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991).
 A.
Plaintiff's first claim of error is that the Commission failed to require the defendants to comply with Glastonbury Subdivision and Resubdivision Regulations (Regulations) Section 5.6(c). This regulation provides as follows:
Where development covers only a portion of the land owned by the Applicant, the Applicant shall submit a non-binding Plan (1" = 100' Scale, Class "D" Survey) indicating potential development of the entire tract in relation to the tract involved in the current application. Any portion not included in the subdivision shall be labeled "other land of `owner' not approved for building purposes." CT Page 7484
The plaintiff failed to present this claim of error to the Commission. Had she done so, the Commission could have remedied any error. "A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board." Dragan v. Connecticut Medical Examining Board, 223 Conn. 618,633, 613 A.2d 739 (1992). Therefore, the plaintiff's failure to raise the claim arising under § 5.6(c) of the Regulations before the Commission bars review here.
In any event, the court finds no merit in the claim. The Regulations define "Applicant" as: "the owner of record or any person, firm, corporation, partnership, association or appointed agent having interest in a parcel of land with written consent by the owner, who applies to the Commission for approval of subdivision or resubdivision of said land." Regulations § 2.1. This definition makes clear that the "Applicant" is not necessarily the owner, but rather includes a person or entity who applies to the Commission with the owner's consent. That is the situation here. The three pages of applications contained in Exhibit 9 of the record consistently reveal that the applicant was Testa Development Associates, who applied with the consent of the owners, the Russells. Thus the requirement that the "Applicant" submit a plan for the development of "other lands . . . not approved for building purposes" applied to Testa, not the Russells. There is no dispute that Testa did not then own the subject property or any "other land . . . not approved for building purposes." Thus, section § 5.6(c) did not require the Commission or Testa to do anything.
 B.
The plaintiff's second claim is the related one that the Commission failed to require the defendants to comply with § 6.8.3 of the Regulations. Section 6.8.3 provides in pertinent part that:
 any driveway that has the potential to, or is anticipated to access "other land of', as defined under Section 6.8(c) of the Glastonbury Subdivision and Resubdivision Regulations, shall be labeled "possible future access drive to undeveloped land" on final development plans. No rear lot shall be approved without compliance with this paragraph.
The plaintiff now argues that the final plans reveal a driveway that provides access to both the subject property and to other, undeveloped land of the Russells and that this driveway was not labeled in accordance with this section of the Regulations. CT Page 7485
The plaintiff also failed to raise this issue before the Commission. The plaintiff's failure has hampered this court's review. The regulation refers to a definition of "other land of" in § 6.8(c), but § 6.8(c) of the Regulations does not exist. Because of the plaintiff's omission, the Commission did not have an opportunity to clarify what its regulations mean. The plaintiff's failure to present this claim to the Commission prevents judicial review. Dragan v. Connecticut MedicalExamining Board, supra, 223 Conn. 633.
Even on the merits, the plaintiff does not prevail. Section 5.1 of the Regulations provides that "[t]he Applicant may submit a Final Development Plan at any time, along with an application for subdivision approval on forms prescribed by the Commission" (emphasis added). Thus it is the applicant, and not necessarily the owner, who must submit the "final development plans" to which § 6.8.3 refers.[1] It thus appears that § 6.8.3 follows the same approach as § 5.6(c) in that the driveway and the other, undeveloped lands referred to in these regulations are that of the applicant, not the owner. Because it is undisputed that the applicant, Testa, did not own a qualifying driveway or any undeveloped land in the area depicted on the plans, section 6.8.3 simply did not apply to this case.
 C.
Section 22a-19(b) of the General Statutes, which is part of CEPA, provides as follows:
 In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare.
The plaintiff's final argument is that the proposed subdivision causes an unreasonable impairment to wildlife, which is a natural resource, and that the Commission failed to consider any alternatives to the proposal as required by the statute.
There is no dispute that all wildlife are "natural resources" within CT Page 7486 CEPA. See Paige v. Town Plan and Zoning Commission, 235 Conn. 448,668 A.2d 340 (1995). Further, the defendants do not claim that the Commission formally considered any alternatives to the proposed subdivision. Thus the dispositive issue is whether the proposal causes "unreasonable . . . impairment" of natural resources so as to require the Commission to consider alternatives under § 22a-19(b).
In Gardiner v. Conservation Commission, 222 Conn. 98, 608 A.2d 672
(1992), the Supreme Court held that:
 the determination of whether a specific degree of contamination or other environmental detriment is unreasonable may often turn on the availability of alternatives. Even minimal environmental harm is to be avoided if, "considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."
Id., 109 (quoting General Statutes § 22a-19(b)). The Court thus suggested that an administrative board must consider alternatives to determine whether there is "unreasonable impairment" unless there is no "minimal environmental harm."
Three years later, however, in Paige v. Town Plan Zoning Commission,235 Conn. 448, 668 A.2d 340 (1995), the Court took a different approach. In Paige, the Court addressed the concern that an expansive definition of "natural resources" would require zoning boards to consider "alternatives pursuant to § 22a-19(b) for every subdivision in the state." (Internal quotation marks omitted). Id., 462. The Court allayed those concerns by emphasizing the following language from the dissenting opinion of the Appellate Court decision that it reversed:
 By its plain terms, General Statutes § 22a-19(b) requires the consideration of alternative plans only where the commission first determines that it is reasonably likely that the project would cause unreasonable pollution, impairment or destruction of the public trust in the natural resources at issue . . . In view of the factors and standards that govern the determination in each case, any fear that a broad definition [of "natural resource"] will cause alternative plans to be required in virtually every case is plainly unwarranted.
CT Page 7487 (Emphasis in original; internal quotation marks omitted). Id., 462-63 (quoting Schaller, J., dissenting). The Court thus applied a "plain terms" approach to the statute and found that the statute requires a board to consider alternative proposals only when it first determines that there has been "unreasonable impairment" of the environment.
Although the plaintiffs in the present case intervened under CEPA and argued that the proposed subdivision would harm wildlife, the plaintiffs once again failed to present to the Commission the precise argument they make here. Accordingly, the Commission made no explicit finding that the proposed subdivision would result in "unreasonable impairment" to wildlife under CEPA. For this reason alone, the Commission, under Paige, had no obligation to consider alternative plans.
Even the court searched the record to determine the basis for the Commission's rejection of the plaintiffs' arguments, id., 464, the result would not differ. The record reveals a report (Exhibit 18) submitted by Testa from Rema Ecological Services, LLC concerning the presence of the timber rattlesnake and other species of wildlife in the subject area. The report concluded that it is highly unlikely that the timber rattlesnake utilizes the site. The report did find that several species, such as the rose-breasted grosbeak, the coyote, and the wild turkey, do have a habitat or are found within the subject area. The report concludes, however, that "the local diversity of wildlife species would not be compromised by the proposal. This is greatly due to the relative low density of development and the amount of undeveloped and/or protected habitat that exists adjacent to the site." Exhibit 18, p. 3.
Applying the appropriate standard of review, see Samperi v. InlandWetlands Agency, supra, 226 Conn. 587, the Rema report constitutes substantial evidence to support a finding that the proposed subdivision will not cause an "unreasonable impairment" to natural resources. Accordingly, the Commission did not need to consider alternatives to the proposal under CEPA. Paige v. Town Plan Zoning Commission, supra,223 Conn. 462-63.
CONCLUSION
For the foregoing reasons, this court affirms the Commission's decision and dismisses the plaintiffs' appeal.
It is so ordered.
CARL J. SCHUMAN JUDGE, SUPERIOR COURT