[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The issue in this administrative appeal is whether the hearing officer for the defendant Connecticut Department of Motor Vehicles (DMV) properly denied a protest filed by four automobile dealers to the decision of defendant General Motors Corporation (GMC) to establish a GMC light truck dealership in Hamden. Argument of the appeal took place on September 26, 2001. For the reasons stated below, the court dismisses the appeal.
BACKGROUND OF THE CASE
Sections 14-133r through 14-133ee of the General Statutes govern franchising relationships between manufacturers and dealers of motor vehicles. Together, these provisions "recognize the need for intra-brand competition. " McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 569 n. 14, 473 A.2d 1185 (1984). The statutes use the concept of "relevant market area" as "the area within a radius of fourteen miles around an existing dealer or the area of responsibility defined in a franchise, whichever is greater." General Statutes § 14-133r (14). The act "does not guarantee an exclusive right to operate a dealership within a fourteen mile radius, but rather requires the commissioner of motor vehicles to demonstrate good cause, as defined in the statute, for denying the addition or relocation of a dealer in the objecting dealer's "relevant market area." McLaughlin Ford, Inc. v. FordMotor Co., supra. According to General Statutes § 42-133dd (c), "[i]n determining whether good cause has been established for not entering into CT Page 14065 a franchise establishing a new dealer or relocating an existing dealer for the same line make, the commissioner shall take into consideration the existing circumstances, including, but not limited to" eleven factors enumerated in the statute.[1]
On or about March 23, 2000, pursuant to General Statutes § 42-133dd
(a),[2] GMC notified DMV and GMC light truck dealers within the relevant market area of its intention to establish a GMC light truck dealership at defendant Mauro Motors, Inc., which was an existing dealership located at 1635 Dixwell Avenue in Hamden. Four dealers, the plaintiffs here, filed protests pursuant to § 42-133dd (a): Mario D'Addario Buick, Inc., d.b.a. Mario D'Addario Buick-Nissan-GMC Truck, Frank Buick-GMC Truck, Inc., Wallingford Auto Company d.b.a. Wallingford Buick-GMC, and Zee Buick-GMC Truck, Inc.
DMV held an administrative hearing pursuant to § 14-133dd (a) on September 6, 7, and 8, 2000. The hearing officer issued a decision on September 18, 2000 denying the protest. The decision applied the statutory criteria of General Statutes § 42-133dd (c) and concluded that good cause did not exist for denying the establishment of a GMC light truck dealership in Hamden. This appeal followed.
DISCUSSION
 I
At the outset, the defendants attempt to dismiss the appeal for mootness and laches on the ground that the plaintiffs failed to request a stay of DMV's decision, thereby allowing Mauro Motors to open the contested GMC light truck dealership in Hamden and continue to operate it. The court rejects this attempt. Parties are not required to move for a stay of administrative appeals and do not automatically waive their appeal rights if they chose not to do so. See General Statutes § 4-183
(f). By deciding not to seek a stay, the plaintiffs ran the risk of losing business to a new GMC light truck dealership during the pendency of this appeal. The plaintiffs, however, can still obtain practical relief if the court reverses the DMV decision and effectively prevents Mauro Motors from doing such business in the future. Accordingly, this appeal is not moot. See Loisel v. Rowe, 233 Conn. 370, 378, 660 A.2d 323
(1995). Further, the plaintiffs did not delay in prosecuting this appeal. Although Mauro Motors, as it alleges, may have expended considerable money and time in establishing its new dealership during the pendency of this case, it did so at its own peril. Therefore, the plaintiffs are not guilty of laches. See Cummings v. Tripp, 204 Conn. 67,88, 527 A.2d 230 (1987). CT Page 14066
 II
The plaintiffs first contend that DMV abused its discretion by failing to require discovery of various documents requested from General Motors. The plaintiffs initially made a request of GMC for written documents in April, 2000. In May, 2000, the plaintiffs filed a motion for an order to have DMV compel GMC to produce the documents.
At a prehearing conference in June, 2000, however, the parties did not raise any discovery issues and instead "expressed confidence that these issues could be resolved outside the hearing process." (Return of Record ("ROR"), Item 34 (Hearing Officer's Decision), p. 2.) The parties did "resolve the vast majority of the disputes," but the plaintiffs wrote DMV a letter on June 30, 2000 requesting another conference because some documents remained undisclosed. (Amended Return of Record ("Amended ROR"), Item 27.) In response, GMC wrote the hearing officer that the remaining discovery requests were unreasonable. (Amended ROR, Item 31.)
On or about August 1, 2000, the plaintiffs filed a second motion for an order with DMV. The motion mentioned the outstanding document production requests, but specifically requested only that DMV order GMC to produce certain persons for depositions. (Amended ROR, Item 33.) The hearing officer construed the motion as one requesting her to "order the Respondent to produce certain persons for depositions," and denied the motion on August 2, 2000. (Amended ROR, Item 33.) The plaintiffs did not renew the matter at the hearing.
Although the Uniform Administrative Procedure Act ("UAPA") allows each party in a contested case "the opportunity . . . to inspect and copy relevant and material records, papers and documents not in the possession of the party or such agency, except as otherwise provided by federal law or any other provision of the general statutes . . . General Statutes § 4-177c (a)(1), there was no abuse of discretion by the hearing officer in this case. The plaintiffs' August 1, 2000 motion for an order is confusing and unclear. The hearing officer reasonably could have concluded that the motion did not request an order for production of documents. If the plaintiffs did not intend to limit the motion in that regard, they should have renewed the motion or otherwise pursued the matter once the hearing officer construed the motion as only seeking an order concerning depositions. They did not. See Dragan v. ConnecticutMedical Examining Board, 223 Conn. 618, 632-35, 613 A.2d 739 (1992). The record reveals that the defendants disclosed the vast majority of documents and the record does not reveal how the plaintiffs were harmed by the absence of documents that the defendants failed to disclose. For all these reasons, the plaintiffs cannot prevail on this claim. CT Page 14067
 III
The principal issue concerns the hearing officer's approach to the statutory concept of "relevant market area." ("RMA") Judicial review of an administrative agency's action is governed by the UAPA. General Statutes § 4-166 et seq. The scope of that review is very restricted. See MacDermid, Inc. v. Department of EnvironmentalProtection, 257 Conn. 128, 136-37, ___ A.2d ___ (2001). Section 4-183 (j) of the General Statutes provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion (Internal quotation marks omitted). Murphy v.Commissioner of Motor Vehicles, 254 Conn. 333, 343, 757 A.2d 561 (2000).
At the hearing, the plaintiffs proposed using a "combined RMA," which consisted of the combined area encompassed by drawing fourteen mile rings around each of the protesting GMC dealers. Although this proposal had the advantage of examining an area around an existing dealer," as General Statutes § 14-133r (14) requires, there is no particular support for combining several RMAs when there are several protesting dealerships as opposed to evaluating the RMA for each protesting dealer separately. Employment of the plaintiffs' proposal led, somewhat impractically, to the inclusion of dealers that were over twenty miles from the proposed Hamden location and over forty miles from each other. (ROR, Item 34, p. 2, ¶ 2.) The hearing officer accordingly concluded that using the combined RMA was "too expansive to be considered relevant to the establishment of a franchise in Hamden. " (ROR, Item 34, p. 11, § IIIA.) CT Page 14068
Initially, the hearing officer identified the relevant market area as "a radius of fourteen (14) miles around the proposed Hamden dealership. " (ROR, Item 34, p. 2, ¶ 1.) This definition, to be sure, was in direct conflict with the statutory definition of an RMA as a fourteen mile radius "around an existing dealer." General Statutes § 42-133r (14). The ultimate question, however, is whether this unauthorized definition affected "substantial rights." General Statutes § 4-183 (j).
Of the eleven criteria enumerated in § 42-133dd (c), only six — numbers (1), (2), (3), (5), (7), and (10) — expressly employ the "relevant market area" standard. See note 1 supra. The parties agree that criteria number (7) does not apply to this case. An examination of the hearing officer's evaluation of criteria number (2) reveals that, despite initially misdefining "relevant market area" in terms of the proposed dealership, the hearing officer expressly examined the "combined RMA." (ROR, Item 34, p. 6, ¶¶ 24., 25.) In evaluating factor number (3), the hearing officer used a standard similar to the combined RMA, which she labeled the "vicinity of each of the other GMC dealers in the relevant market area." (ROR, Item 34, p. 6 ¶ 27.) Although the hearing officer also examined the Hamden RMA under the latter two factors, the hearing officer found no significant difference in the results under either standard. (ROR, Item 34, p. 6, ¶¶ 24, 25, 26, 27.) Thus no harm to the plaintiffs' case resulted from any reliance on the Hamden RMA for these two factors.
For the remaining factors — (1), (5), and (10) — the hearing officer actually examined evidence affecting some or all of the four protesting existing dealers and thus, in effect, looked at least at the centers of the market area as the plaintiffs defined it.[3] The plaintiffs' case thus reduces to the proposition that the hearing officer did not expressly make findings for three of the ten criteria concerning the automobile market in the outer part of the combined RMA. The court finds that this approach did not significantly affect the plaintiffs' case. The automobile market towards the perimeter of the combined RMA was necessarily less relevant to the protest than the market between the existing and the proposed dealers, which the hearing officer examined in great detail. Further, the hearing officer was not required to put any special weight on the three criteria in question, or even all ten criteria, but rather had to "take into consideration the existing circumstances, including but not limited to" all ten relevant criteria. General Statutes § 42-133dd (c). Finally, the plaintiffs, who bear the burden of proof in this appeal, have not shown how the hearing officer's failure to consider the outer part of the combined RMA in analyzing these three factors had any affect on the ultimate outcome. Thus, this court cannot say that any error by the hearing officer affected "substantial rights" of the plaintiffs. General Statutes § CT Page 140694-183 (j).
 IV
The plaintiffs' final argument is that the hearing officer improperly made a comparison between GMC's local market penetration and its adjusted national performance, rather than its performance in this state, for purposes of evaluating criteria number (9). In full, criteria (9) requires an examination of:
 the reasonably expected market penetration of the line-maker motor vehicle for the community or territory involved, after consideration of all factors which may affect said penetration, including, but not limited to, demographic factors such as age, income, education, size class preference, product popularity, retail lease transactions, or other factors affecting sales to consumers of the community or territory.
General Statutes § 42-133dd (c)(9). As its plain language reveals, criteria (9) does not specify whether DMV should compare a manufacturer's penetration in the "community or territory involved" to the state market, the national market, or, indeed, to any market. Instead, the statute essentially gives the hearing officer discretion to evaluate "all factors which may affect said penetration . . .
The hearing officer did not abuse her discretion in this regard. The hearing officer found that, for purposes of dealer network planning, GMC itself determines dealer penetration of the light truck market by using a national average adjusted for local segment popularity, rather than a state standard. (ROR, Item 34, p. 8, ¶ 41.) Further, the Superior Court had previously upheld DMV's use of a comparison between local and national market penetration under criteria (9). See A-1 Auto Service,Inc. v. Department of Motor Vehicles, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 558549 (July 18, 1996Maloney, J). Thus, the hearing officer's approach to this issue was not arbitrary, capricious, or an abuse of discretion. General Statutes §4-183 (j).
Further, the hearing officer specifically found that GMC's penetration in the local market was lower than expected when compared to both the adjusted national standard and "the State standard which was used by the Petitioners." (ROR, Item 34, p. 9, ¶ 50.) Therefore, because the evidence reflected the same market penetration deficiencies under either standard, the plaintiffs cannot show that the hearing officer's decision affected their substantial rights. CT Page 14070
CONCLUSION
For the foregoing reasons, the appeal is dismissed.
Carl J. Schuman Judge, Superior Court